## 70564. LASSITER v. THE STATE.
(333 SE2d 412)

BIRDSONG, Presiding Judge.

The defendant, John W. Lassiter, Jr., appeals his conviction for the offenses of burglary, aggravated assault, aggravated sodomy, rape, kidnapping with bodily injury, and possession of a firearm by a convicted felon.

On the night of January 9, 1983, the female victim was spending the night with her boyfriend, Eddie Davis, who lived in the home of Thomas Palmer. Palmer's house was on Fishcamp Road in Monroe County, Georgia. On the morning of January 10th, Palmer and Davis left for work while the victim remained in the house, sleeping. She was awakened by a noise at approximately 10:30 a.m. She saw the defendant come through the door to her bedroom with a gun in his hand and three knives in his belt. She pulled the bedsheet over her head and was struck with the gun. He ordered her to commit an act of oral sodomy upon him while he pointed the weapon at her. Following that act, he had intercourse with her. She had spent the night with her boyfriend, in his bedroom, and was undressed. She was told to dress and both departed in her car. The defendant took the money in her pocketbook, $7, and bought gas for the car. They rode around for several hours over middle Georgia and then turned off on a side road where she was again forced to have intercourse. Later, the defendant told her if she went to the police, he would kill her. He left the car and she drove away. She went to her home in Monticello and was taken to a hospital for treatment of a laceration in her scalp of over one inch in length. A rape kit examination was performed and the

vaginal smear was sent to the state crime lab, together with pubic hair, blood, and saliva samples from her boyfriend and the defendant. The first trial ended in a mistrial. This appeal is from the second trial which resulted in a conviction on all counts. *Held*:

1. The first trial ended with a mistrial following a determination that the jury was deadlocked. Defendant argues he did not consent to the mistrial and his plea of former jeopardy should have been sustained. We do not agree. "Retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy where there is manifest necessity for declaring the mistrial. [Cits.] Where the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial. [Cits.] The determination as to whether the jury is in fact hopelessly deadlocked is a matter 'somewhat in the discretion' of the trial court. [Cit.]" *Glass v. State*, 250 Ga. 736 (2) (300 SE2d 812). No abuse of discretion has been shown. See also *Murff v. State*, 165 Ga. App. 808 (1) (302 SE2d 697).

2. Defendant was first indicted upon a similar indictment and the mistrial was declared. He was reindicted, but that indictment was nol prossed. The present indictment was then returned with the addition of a recidivist count which cited three prior convictions for burglary, robbery by intimidation, and armed robbery. We find no fault with the procedure followed. Addition of the recidivist count is not an additional charge relating to a criminal offense but has reference only to a sentence authorized for a convicted defendant. OCGA § 17-10-7. To be sentenced as a recidivist, the defendant must be indicted as a recidivist. *Fore v. State*, 237 Ga. 507, 508 (228 SE2d 885). The indictment was purged to delete such information before being given to the jury and the recidivist count became relevant only in the event of conviction. See *Clemmons v. State*, 233 Ga. 187 (210 SE2d 657). Defendant's reliance upon *Curry v. State*, 248 Ga. 183 (281 SE2d 604), is misplaced. There, the defendant was indicted "for additional crimes" after the jury was unable to reach a verdict at the first trial. Here, no additional crime was added to the last indictment. Only prior convictions were added to declare correctly the accused a recidivist in the event a conviction was reached at the second trial. The addition of the recidivist count is nothing more than an amendment to a nol prossed indictment by the grand jury, which is permissible. See OCGA § 17-8-3; *Bowens v. State*, 157 Ga. App. 334 (227 SE2d 326); *State v. Eubanks*, 239 Ga. 483, 490 (238 SE2d 38); *Jones v. Murray*, 223 Ga. 519 (156 SE2d 360); see generally Daniel, Ga. Criminal Trial Practice (2d ed.) 267, § 13-15; 15 EGL 134, Indictments & Accusations, § 14; 41 AmJur2d 898-902, Indictments & Informations, §§ 29-37.

3. The grant or denial of a motion for funds to employ an investi-

gator lies within the sound discretion of the trial judge and his findings will not be overturned on appeal in the absence of a showing of an abuse of discretion. *Cunningham v. State*, 248 Ga. 558 (4) (284 SE2d 390). We have found no abuse of discretion.

4. The second rape, which was accomplished after inception of the kidnapping "is sufficient evidence of bodily injury to authorize the conviction of the accused for kidnapping with bodily injury to the victim." *Peek v. State*, 239 Ga. 422, 427 (238 SE2d 12), U. S. cert. den. 439 U. S. 882.

5. The trial court is vested with broad discretionary powers in enforcement of the sequestration rule, which will not be controlled absent abuse of discretion. *Cobb v. State*, 244 Ga. 344, 357 (260 SE2d 60). The conduct of the trial is necessarily controlled by the trial judge (*Nunnally v. State*, 235 Ga. 693, 699 (221 SE2d 547), U. S. cert. den. 425 U. S. 959), and permitting the chief investigator to remain in the courtroom to assist the district attorney and testify after hearing other witnesses, is not an abuse of discretion. *Jarrell v. State*, 234 Ga. 410, 420 (216 SE2d 258).

6. Defendant argues that the pre-trial procedure followed by the state in his identification resulted in a substantial likelihood of irreparable misidentification and required suppression of in-court identification. The victim was shown a photo lineup at police headquarters on the day following this event and identified the photograph of the defendant from six photographs. No suggestion was made that the photo of her attacker was in the group, or which photo she should select. Approximately two days later, she was shown the driver's license photograph of the defendant and again identified it as the individual who attacked her.

In *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247), the Supreme Court set forth a two-part test to determine if pre-trial identification procedures infringed upon the constitutional rights of a suspect. The first inquiry was whether the procedure followed was impermissibly suggestive. Only if it was, need a court inquire whether there was a substantial likelihood of irreparable misidentification. *Payne v. State*, 233 Ga. 294, 299 (210 SE2d 775). The procedure followed here was not impermissibly suggestive and we need not address the second test. *Dodd v. State*, 236 Ga. 572, 573 (224 SE2d 408); *Wimberly v. State*, 233 Ga. 386 (211 SE2d 281); *Key v. State*, 147 Ga. App. 800, 801 (250 SE2d 527).

The victim was "absolutely sure" of her identification. She had been within a few feet of the defendant for four to five hours, and her identification was based upon her recollection of the events of January 10. The trial court did not err in refusing to suppress the victim's in-court identification of the defendant.

7. Counsel for defendant moved to suppress "testimony of Leslie

Goodrum . . ." on the grounds of relevancy, hearsay, violation of "all due process constitutional rights of the defendant," and that such testimony would place the defendant's character in issue and "inflame the jury prejudicially against defendant." The motion was denied. Defendant testified at trial that he did not know and had never seen the victim before his first trial in June 1984. He was not in Monroe County on June 10, 1983.

Leslie Goodrum appeared as a witness for the state. He had known defendant Lassiter when they spent three months in the same jail cell. Lassiter told him "he couldn't be charged with rape, just raping her . . . he tried to rape her but he didn't rape her; that he went to her house that day where she was staying that night and went in there — he went in the house and that's where he got the guns and the knives from. That night, he said something about he hit her or he slightly hit her. . . . He couldn't rape her at the time because she was struggling. And after all the struggling, that they just left the house and they rode for about three or four hours or something and then they stopped for the gas station. And said that he got out of the car to get gas and said she knew not to run because he knew that he would kill her.

"After he got the gas, they left the station. They went to a church yard. He tried to rape her out there also, again. . . ."

Goodrum's testimony was not hearsay and it was relevant. No violation of due process or constitutional rights of defendant has been shown. Goodrum was not an agent of the state and *Miranda* warnings were not required. *Bethea v. State*, 251 Ga. 328 (7) (304 SE2d 713). Incriminating statements made by a defendant to a third party are admissible. Id.; *Harper v. State*, 249 Ga. 519, 528 (292 SE2d 389). Such voluntary statements do not trigger an accused's right to counsel under the Georgia or U. S. Constitutions. *Berryhill v. State*, 249 Ga. 442 (10) (291 SE2d 685). "[F]ar from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable." *United States v. Washington*, 431 U. S. 181, 187 (97 SC 1814, 52 LE2d 238). The prior criminal convictions of this witness affect weight and credibility of his testimony, but are not disqualifying. This enumeration is without merit.

8. In criminal prosecution for rape, evidence of the past sexual behavior of the complaining witness is not admissible unless it involves participation of the accused or supports an inference that the accused could have reasonably believed the complaining witness consented to the conduct complained of in the indictment. OCGA § 24-2-3. In the instant case, the past sexual behavior of the victim did not involve the accused and his defense was not consent but that he was not involved in this incident and had never seen the complainant before.

Defendant contends he was improperly limited in his examination of his "scientific witnesses." He presented three experts from the Georgia Crime Laboratory in an attempt to show that the pubic hair, blood, saliva and semen samples taken from the defendant did not connect him in any way to the victim. Similar samples did connect the victim to her boyfriend, but samples taken from the defendant were "inconsistent and inconclusive" and neither connected defendant with the victim nor ruled out any connection with the victim. The trial court ruled that since such evidence "could not have excluded the defendant" he would not permit the evidence showing that sperm was taken from the victim.

Georgia's so-called "Rape Shield" law prevents evidence of prior sexual behavior of the victim unless it contributes to the guilt or innocence of the accused. *Parks v. State*, 147 Ga. App. 617 (249 SE2d 672). Under the facts of the instant case, we find no reversible error. Consent was not in issue as the defendant relied upon alibi. There was no prior sexual conduct between the victim and defendant. It was obvious to the jurors that the victim had spent the night with her boyfriend in his bedroom and the following morning did not have any clothes on when her attacker entered her room. Evidence connecting her boyfriend with sperm found in the victim would not have been unusual. But, since the evidence refused neither connected defendant to the victim nor excluded him from participating in the sexual act, and the victim was absolutely certain of her identification, and defendant's former cellmate testified to a version of events told to him by defendant which was substantially identical to the testimony of the victim, and the .357 Magnum taken from Palmer's house was recovered in Birmingham, Alabama, and defendant was arrested in Abbottsville, Alabama, we find no reversible error.

9. The trial court did not err in denial of the motion for a directed verdict of acquittal, and the motion for new trial. We find no merit to the enumerations alleging the general grounds.

10. We have examined the remaining enumerations and find no substantial merit to them.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED JULY 8, 1985.

*C. Robert Melton*, for appellant.
*E. Byron Smith, District Attorney, Hugh D. Sosebee, Jr., Assistant District Attorney*, for appellee.