A01A0870. FIRST BANCORP MORTGAGE CORPORATION
v. GIDDENS et al.
(555 SE2d 53)

SMITH, Presiding Judge.

After a jury entered a defense verdict for a real estate attorney and his law firm in a legal malpractice suit, First Bancorp Mortgage Corporation ("Bancorp") filed an unsuccessful motion for new trial. In this appeal, Bancorp contends that the trial court erred by excluding three exhibits, excusing a juror for cause, permitting certain testimony over objection, and directing a verdict on punitive damages. Bancorp also asserts that the trial court erred by instructing the jury on contributory and comparative negligence and by incorrectly responding to a question posed by the jury. We find no error and affirm.

Bancorp is a Virginia corporation that underwrites mortgages, funds them, and then sells them in the secondary market. In October 1996 and November 1996, Bancorp entered into two residential real estate transactions in Atlanta with Louie B. and Doreen Golden and Timothy Aiken, respectively. Shortly thereafter, both the Goldens and Aiken defaulted on their loans. Despite selling both mortgages to another company, Bancorp retained an obligation to pay foreclosure losses occurring in the first 12 months. Richard Arms, the president of Bancorp, described both transactions as being what he termed "flip sales." In such transactions, the same property is sold twice on the same day or within a very short period with the price in the second

sale substantially higher than the first. Arms testified that Bancorp would not have made either loan if he had known they were "flips" and said Bancorp's combined losses were in excess of $78,000. Arms testified that he absolutely would have expected to be notified of the "flip sales" if his own lawyer had closed both loans.

Bancorp sued the closing attorney, Bobby L. Giddens, and his law firm, Giddens, Davidson & Mitchell, for legal malpractice. The crux of Bancorp's complaint was that because Giddens had been the closing attorney for both prior sales, he knew, or in the exercise of ordinary care should have known, that the value of the premises was far below the amount of the loan being closed.

In the malpractice affidavit accompanying the complaint, Bancorp's expert, William E. Duncan, testified that due care requires the lender's closing attorney to "notify the lender of any discrepancy, abnormality or irregularity." At trial, Duncan testified that when a flip transaction occurs that the closing attorney knows about, then that attorney has a duty to inform the lender and "let them re-evaluate the risk of making a loan." He testified that Bancorp should have been told about the substantial increases in the sales price of the same property sold within a short time period. In Duncan's expert opinion, because Giddens had conducted the closings, Giddens was negligent for failing to notify Bancorp that the property securing the loan to the Goldens sold for $17,000 then $65,075 within 15 days and that the property securing the loan to Aiken sold for $30,000 then $77,500 a day later. According to Duncan, a flip transaction puts a person on notice that something may be wrong. But he also conceded that there may occasionally be legitimate reasons for these types of transactions.

Defense expert Pickens Andrew Patterson, Jr. disagreed with Duncan. Patterson testified that the primary responsibilities of a closing attorney are to ensure that good title can be conveyed and that the lender obtains the desired mortgage position. Patterson explained that a closing attorney must follow the written instructions provided by the mortgage lender "to the 't.'" In his view, a closing attorney does not have a duty to advise of prior sales unless the closing instructions require him to do so. Patterson reviewed both loans at issue, and in his opinion, Giddens followed generally accepted standards of care applicable to attorneys acting under the same or similar circumstances. In Patterson's expert opinion, a closing attorney does not have a legal duty or a legal responsibility to disclose recent prior sales involving substantial discrepancies in price but agreed that it would "probably" be the "better practice" to inform the lender about such sales. After the jury found for Giddens and his law firm, Bancorp appealed.

1. The trial court did not err in excluding three exhibits that con-

sisted of other lawsuits filed by other mortgage lenders against Giddens and his law firm alleging essentially the same closing practices. These lawsuits alleged "flip sales" that Giddens had purportedly handled to the detriment of his clients. One complaint alleged that Giddens had committed fraud and engaged in a pattern of racketeering activity. The other alleged that Giddens had committed fraud, conspiracy to defraud, racketeering, and deception. Both complaints were supported by expert testimony to the effect that Giddens and his law firm had breached their duty of care in conducting closing and post-closing proceedings. Bancorp sought to offer this evidence for the limited purpose of showing a continuing course of conduct to support its claim for punitive damages.

In suits for negligence, "[s]imilar acts or omissions on other and different occasions are not generally admissible to prove like acts or omissions at a different time or place. [Cit.]" *Skil Corp. v. Lugsdin*, 168 Ga. App. 754-755 (1) (309 SE2d 921) (1983); see *Genins v. Geiger*, 144 Ga. App. 244, 248 (6) (240 SE2d 745) (1977). Nevertheless, such evidence may under certain limited circumstances be admissible to establish, among other things, a course of conduct or bad faith. *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*, 238 Ga. App. 792, 794-795 (2) (520 SE2d 481) (1999); see *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 169 (3) (419 SE2d 69) (1992). Or, when the question of malice or wanton misconduct enters into play, such proof may then be permitted. See *Gunthorpe v. Daniels*, 150 Ga. App. 113, 114-115 (3) (257 SE2d 199) (1979). But, even under these exceptions, the evidence must not only be relevant but must also be examined to ensure that it will not confuse the issues or present a potential for undue prejudice or unfair surprise. *Dimarco's, Inc. v. Neidlinger*, 207 Ga. App. 526, 527 (1) (428 SE2d 431) (1993). In exercising its discretion in determining the admissibility of evidence, the trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or of confusing the issues or misleading the jury. *Goss v. Total Chipping*, 220 Ga. App. 643, 644 (2) (a) (469 SE2d 855) (1996). Here, admitting information about the other lawsuits targeting Giddens and his law firm would likely have engendered a substantial risk of creating undue prejudice or confusion, especially since the lawsuits involved unrelated transactions and the plaintiffs were other mortgage lenders using different closing instructions and different procedures. In these circumstances, we cannot say that the trial court abused its discretion in excluding these exhibits. See *Webster v. Boyett*, 269 Ga. 191, 195-196 (1) (496 SE2d 459) (1998).

2. The trial court did not abuse its discretion in excusing a juror for cause. Whether a prospective juror can decide the case in accor-

dance with the evidence presented and without bias, partiality, or outside influences is a discretionary matter for the trial court to decide. *Grady Tractor Co. v. First Nat. Bank &c.*, 213 Ga. App. 663, 664 (1) (446 SE2d 228) (1994). Here, after juror number 18 revealed that her husband had an unrelated lawsuit pending against Giddens, the trial court agreed to excuse her. The trial court felt that the prospective juror had been properly challenged for cause because she had a potential financial interest in the outcome of this case. No manifest abuse of discretion has been shown in the excusal of this juror. See *Page v. Janko*, 200 Ga. App. 547, 548 (1) (409 SE2d 48) (1991).

3. Bancorp claims that the trial court erred in permitting its president, Arms, to respond over objection to two questions about closing practices. It claims that evidence about the course of conduct between Bancorp and other attorneys was inadmissible. We disagree.

The crux of the malpractice case was whether Giddens breached a duty to Bancorp by failing to report the flip sales. During cross-examination, Arms conceded that Giddens complied with his written closing instructions and that Bancorp received good title to the property and valid first liens. Arms also admitted that nothing in the closing instructions required Giddens to disclose to Bancorp any prior sales. After Arms testified that Bancorp had used three different attorneys to close loans originated by the same broker involved in these two closings, Arms was asked if the other closing attorneys had reported to Bancorp any prior sales. Over objection, Arms admitted that these other attorneys did not report the flip sales to him. The inquiry then broadened: "And, in fact, isn't it true that as of May of 1999, no closing attorney that had ever closed loans for First Bancorp Mortgage Corporation has ever reported prior flip sales to you prior to closing the transaction?" After conceding that point, again over objection, Arms acknowledged that none of the six flip sales in Atlanta, the two in Washington, D.C., or the one in Maryland had been reported to Bancorp by the closing attorneys.

As the plaintiff in the legal malpractice action, Bancorp had to establish as part of its case the standard of care that a closing attorney owes to a lender. Conversely, Giddens had the right to present evidence about customary practices and procedures used by other closing attorneys, including those whom Bancorp had employed. Moreover, since Bancorp was seeking punitive damages, the evidence was relevant to the issue of whether Giddens's failure to report the flip sales was so grossly an aberration from standard practice as to constitute wilful misconduct or such an entire want of care as would raise the presumption of conscious indifference to consequences. See OCGA § 51-12-5.1.

4. The trial court did not err by directing a verdict on the issue of

punitive damages. Ordinarily, the question of punitive damages lies within the exclusive province of the jury. *Read v. Benedict*, 200 Ga. App. 4, 7 (2) (406 SE2d 488) (1991). But absent any evidence to support such an award, the trial court may properly, as here, direct a verdict. See *Harris v. Leader*, 231 Ga. App. 709, 712 (1) (499 SE2d 374) (1998); *Ross v. Hagler*, 209 Ga. App. 201, 204 (3) (433 SE2d 124) (1993).

5. Bancorp maintains that the record is devoid of evidence to support the jury instructions on contributory and comparative negligence.

When there is any evidence upon a particular issue, the trial court may properly charge the law applying to that issue. *Oxford v. Upson County Hosp.*, 211 Ga. App. 59, 60 (438 SE2d 171) (1993). Moreover, the defenses of contributory and comparative negligence when supported by evidence may be raised in a professional malpractice case. See *Ferro v. Boswell*, 242 Ga. App. 634, 636 (3) (530 SE2d 533) (2000). Here, the evidence showed that it was Bancorp, not Giddens, who hired the real estate broker and trusted her to hire the appraiser.[1] While it appears that this broker and the appraiser may have defrauded Bancorp, no evidence suggested that Giddens colluded with them.[2] Arms admitted that Bancorp could have included in its closing instructions a requirement to report prior or recent sales, but did not do so. Although the title report in one transaction reflected a recent sale, Bancorp made no further inquiry. The trial court did not err in giving these instructions to the jury. See *Ferro*, supra.

6. Bancorp contends that a new trial is mandated because the trial court invaded the province of the jury in responding to a jury question about the meaning of malpractice. Bancorp claims that in recharging the jury the trial court expressed an opinion that the failure to use "the better practice" of advising the lender about recent sales did not constitute malpractice.

After commencing deliberations, the jury posed three questions to the court. The jury requested and received a recharge on "a legal definition for malpractice." Another jury question inquired, "Is the phrase, 'better practice' (as was stated by Mr. Patterson) a legal term and is the omission of it synonymous or related to the act of 'malpractice'?" The trial court responded, "No, it is not synonymous with mal-

---

[1] Unknown to the jury and apparently to Bancorp or Giddens, the broker and the professional appraiser employed by Bancorp had allegedly falsified bank records and employment histories in other transactions. Evidence that this broker was under indictment for involvement in a "flip scheme" in the local real estate market was excluded from this trial.

[2] During his deposition, Aiken steadfastly refused to answer questions about his loan obtained from Bancorp, repeatedly invoking his privilege against self-incrimination.

practice, and you should apply the definition of malpractice as given to you in the charge by this court in your deliberations in this case."

In a legal malpractice case, in addition to proving the employment of the defendant attorney, the plaintiff must establish the failure of the attorney to exercise ordinary care, skill, and diligence and must prove such negligence proximately caused the plaintiff's damages. *Rogers v. Norvell*, 174 Ga. App. 453, 457 (2) (330 SE2d 392) (1985). As to the element of "ordinary care, skill and diligence . . . the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances." (Citations, punctuation and emphasis omitted.) *Allen v. Lefkoff, Duncan, Grimes & Dermer*, 265 Ga. 374, 375 (2) (a) (453 SE2d 719) (1995). The breach of duty in a legal malpractice case "must relate directly to the *duty* of the attorney, that is, the duty to perform the task for which he was employed." (Emphasis in original.) *Tante v. Herring*, 264 Ga. 694, 695 (1) (453 SE2d 686) (1994).

A jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law. *Langston v. State*, 208 Ga. App. 175, 177 (430 SE2d 365) (1993). But, in this context, the phrase "better practice" does not mean the same thing as the term "malpractice." See, e.g., *McClenton v. Zant*, 247 Ga. 554 (277 SE2d 501) (1981) (failure to follow the "better practice" does not foreclose finding that trial counsel's performance was reasonably effective). The issue is not what conduct might constitute "better practice" but what degree of skill and care is ordinarily used by other closing attorneys in similar situations. See *Allen*, supra. Although Bancorp complains that the trial court's response to the query eviscerated its case, the dispositive issue of whether Giddens had failed to exercise the requisite degree of professional skill, care, and diligence by not notifying Bancorp about the two flip sales remained for the jury to decide.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED OCTOBER 3, 2001.

*Gregg Loomis*, for appellant.
*Pursley, Howell, Lowery & Meeks, John R. Lowery*, for appellees.