A02A1362. WARE et al. v. HENRY COUNTY WATER & SEWERAGE AUTHORITY.
(575 SE2d 654)

POPE, Senior Appellate Judge.

The Henry County Water and Sewerage Authority (HCWSA) initiated this action in Butts County Superior Court to condemn 4.34 acres owned by Marilyn Patrick Ware, James D. Patrick, Jr. and Alice Patrick Taunton in Butts County (the "Patricks"). This condemnation action was filed in pursuit of HCWSA's plan to build a reservoir that will straddle Henry and Butts Counties and provide for Henry County's future water needs. The special master in the case recommended that the Patricks' property be condemned and that their compensation for the property be $16,000. The Patricks appealed the award of the special master to the superior court. The Butts County Superior Court later adopted the special master's condemnation recommendation as the judgment of the court following the court's denial of a motion to dismiss filed by the Patricks.[1] The matter subse-

---

[1] The trial court certified its denial of the Patricks' motion to dismiss for interlocutory appeal, but this Court denied the Patricks' application.

quently proceeded to trial on the issue of the property's valuation, where the jury returned a verdict in favor of the Patricks in the amount of $43,400.

The Patricks appeal from various orders issued during the course of this long and complex litigation. We will address the pertinent procedural history in the context of the Patricks' enumerations.

1. The Patricks assert that the trial court erred in denying their motion to dismiss on various grounds. We find no error.

(a) They first assert that HCWSA lacked the authority to condemn their Butts County property. They argue that the Butts County Water and Sewerage Authority (BCWSA) was granted exclusive jurisdiction in Butts County over water reservoirs by the legislature, which expressly granted BCWSA the power of eminent domain. Ga. L. 1986, pp. 5457, 5461, § 4 (3). In contrast, they assert that the act creating HCWSA did not expressly grant it the power of condemnation. Ga. L. 1961, p. 2588. Even if HCWSA has the power of condemnation, the Patricks assert that it lacked the authority to exert it extraterritorially in Butts County.

In ruling that HCWSA has the power of condemnation, the trial court relied upon *Johnston v. Clayton County Water Auth.*, 222 Ga. 39 (148 SE2d 417) (1966), in which the Supreme Court of Georgia ruled that the Clayton County Water Authority (CCWA) had the power of eminent domain. The Supreme Court first examined the act creating CCWA, Ga. L. 1955, pp. 3344-3351. It concluded that the act did not grant CCWA the power of eminent domain, but did grant it the power to build and maintain a water system and to issue revenue anticipation certificates. The court then examined the Revenue-Certificate Law of 1937, Ga. L. 1937, pp. 761-774, now codified at OCGA § 36-82-60 et seq. That law gives the power of eminent domain to local public entities having corporate powers and the right to issue revenue certificates. OCGA §§ 36-82-61 (2) (C); 36-82-62 (a) (1). The Supreme Court concluded, therefore, that CCWA had the power of eminent domain. 222 Ga. at 41-42 (2).

Similarly, while the act creating HCWSA does not expressly grant it the power of eminent domain, it does grant the authority the power to build and maintain water systems "[both] within [and] without the limits of said county," and to join the governing authority in the issuance of revenue anticipation certificates. Ga. L. 1961, p. 2589, § 2. Accordingly, HCWSA also possesses the power of eminent domain as granted under OCGA § 36-82-62 (a). See *Johnston*, 222 Ga. at 41-42; *Austin Enterprises v. DeKalb County*, 222 Ga. 232, 234-235 (1) (b) (149 SE2d 461) (1966) (water authority had the power of eminent domain "even without the express grant of authority by a special law").

And that statute expressly provides that the power of eminent domain shall extend outside of the county's territorial limits, as it grants:

> [the] power . . . [t]o acquire, by gift, purchase, or the exercise of the right of eminent domain, and to construct, to reconstruct, to improve, to better, and to extend any undertaking *wholly within or wholly outside the governmental body or partially within and partially outside the governmental body*; and to acquire, by gift, purchase, or the exercise of the right of eminent domain, lands, easements, rights in lands, and water rights in connection therewith.

(Emphasis supplied.) OCGA § 36-82-62 (a) (1).[2]

(b) The Patricks also assert that the intergovernmental contracts clause of the Georgia Constitution, Art. IX, Sec. II, Par. III (b) (1), required HCWSA to obtain the consent of Butts County before proceeding with the condemnation action. Our Supreme Court has held, however, that this clause does not apply when a governmental entity has been given a specific, extraterritorial power by general or local law. *Kelley v. City of Griffin*, 257 Ga. 407-409 (359 SE2d 644) (1987); *Coweta County v. City of Newnan*, 253 Ga. 457, 459-460 (1) (320 SE2d 747) (1984). Because OCGA § 36-82-62 explicitly grants HCWSA extraterritorial powers of eminent domain, the authority was not required to obtain Butts County's agreement before instituting this condemnation action.

(c) The Patricks further rely upon a variety of statutes to assert that HCWSA was required to obtain various permits before condemning their property, but we do not read any of these statutes as imposing such a requirement.

The Patricks assert that the authority was required under OCGA § 12-5-29 (b) to obtain a permit from the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources (DNR) before condemning their land. The Georgia Water Quality Control Act, OCGA § 12-5-21 et seq., upon which the Patricks rely, grants to the DNR the authority to regulate the withdrawal of surface waters in the state. The specific provision cited by the Patricks merely requires that an EPD permit be obtained prior to construction of a system for the disposal or discharge of sewage or

---

[2] It appears that the Patricks are arguing that BCWSA's power of eminent domain somehow exceeds that of HCWSA because it was expressly granted by the legislation creating BCWSA. But that argument is not supported by the legislation itself, which provides: "This Act does not in any way take [away] from . . . any adjoining county the authority to own, operate, and maintain water systems or issue revenue bonds as is provided by Article 3 of Chapter 82 of Title 36 of the OCGA, the 'Revenue Bond Law,' " which encompasses OCGA § 36-82-62. Ga. L. 1986, pp. 5457, 5471, § 31.

waste. OCGA § 12-5-29 (b). Nothing in the language of the statute required a permit before the filing of this condemnation proceeding.

And the Patricks' assertion that HCWSA was required under OCGA § 12-5-376 (a) to obtain a permit to construct a dam prior to filing suit is similarly without merit. That statute provides only that a permit must be obtained "prior to [the] commencement of construction." OCGA § 12-5-376 (a). Nor is there merit to the Patricks' argument that federal law required HCWSA to acquire a Section 404 permit under the Federal Clean Water Act, 33 USC § 1344, before filing this action. And we do not read OCGA § 36-80-18, which requires that an environmental impact assessment be performed prior to the acquisition of real property for parks or recreational use, as preempting this condemnation proceeding, as the Patricks contend.

(d) The Patricks also rely upon provisions of the Georgia Water Supply Act, OCGA § 12-5-471 et seq., to assert that HCWSA was required to have an agreement with Butts County before initiating this action. While the provisions cited by the Patricks impose requirements upon the DNR, nothing in those statutes imposes any requirement upon HCWSA prior to instituting a condemnation action. See OCGA §§ 12-5-472; 12-5-475.

(e) The Patricks next argue that their motion to dismiss should have been granted because HCWSA violated the statutory requirements by dismissing the probate judge and the tax commissioner of Butts County as parties to the condemnation proceeding after the trial court ruled that they were necessary parties. But we find no ruling by the trial court that the probate judge and the tax commissioner were necessary parties. Rather, the court ordered only that they be served with a copy of the petition of condemnation.

The trial court ordered service upon the probate judge in a representative capacity on behalf of "all unknown parties, unknown person or persons claiming any interest in the property, unborn remaindermen and all persons laboring under disability and not represented by guardians or other personal representatives." See OCGA § 22-2-107 (f). And the Code provides that the tax commissioner be served with notice of the petition "where any taxes are alleged or supposed to be due or unpaid," OCGA § 22-2-134, although there is no evidence in the record of such unpaid taxes on the Patricks' property.

HCWSA later dismissed without prejudice the tax commissioner, the probate judge, unknown owners, unborn remaindermen, minors or insane persons having title, interest, claim or demand in or against the property. Even assuming, without deciding, that this dismissal was unauthorized, there is nothing in the record to show how this dismissal prejudiced the Patricks' interests with regard to the property so as to preempt the condemnation proceeding against them.

Moreover, as the trial court noted, the special master ruled on the only issue raised by the tax commissioner and the probate judge: whether the special master should be recused. Under these circumstances, we think the trial court properly found that the dismissal of these nonrelated parties provided no basis to support the Patricks' motion to dismiss.

2. The Patricks next assert error in the failure to grant their motion to recuse the special master in the case. They argued for recusal under the Judicial Code of Conduct on the ground that the special master practiced before and at times had been a judge pro tem of the Juvenile Court of Henry County where the attorney for HCWSA presides on a part-time basis. In support of this argument, the Patricks introduced evidence that the special master had been compensated for his services by the juvenile court.

"The alleged bias of the judge which would warrant a recusal must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment. . . . *Birt v. State*, 256 Ga. 483, 486 (4) (350 SE2d 241) (1986)." (Punctuation omitted.) *Larsen v. State*, 253 Ga. App. 196, 198 (2) (558 SE2d 418) (2001). Based upon this standard, we find that the special master's occasional appearance in juvenile court before HCWSA's attorney provides no basis for recusal. "Recusal is not required simply because a judge may have to issue a ruling that might offend an individual or group that could possibly take adverse action against him. There is a presumption that a trial judge, acting as a public official, faithfully and lawfully performs the duties devolving upon him." (Citation and punctuation omitted.) *Kelly v. State*, 238 Ga. App. 691, 693 (1) (520 SE2d 32) (1999). Nor do we find a basis for a finding of bias in the fact that the special master also serves as judge pro tem for the same juvenile court. See generally *Thomason v. State*, 199 Ga. App. 875, 876 (1) (406 SE2d 528) (1991).

Therefore, after considering the Patricks' arguments, we find no evidence of bias that would prevent them from receiving a fair hearing uninfluenced by prejudgment on the part of the special master. We thus find no abuse of discretion in the denial of their motion to recuse. See *Central of Ga. R. Co. v. Lightsey*, 198 Ga. App. 59, 60 (1) (400 SE2d 652) (1990) (sets forth abuse of discretion standard).

3. The Patricks further contend that the trial court erred in granting summary judgment on their counterclaims asserting bad faith and intentional trespass and claiming damages for the illegal cutting of trees, shrubs and other property.[3]

---

[3] Although the Patricks also raised additional issues in counterclaim, they do not argue such matters on appeal, and we will not address them.

The Patricks alleged that HCWSA's appraiser and surveyor had illegally entered their property. But the law in Georgia is clear that a "prospective condemning body has the right, incidental to its power of eminent domain, to enter private property in order to survey, inspect, and appraise the property." (Citation and punctuation omitted.) *Walker v. City of Warner Robins*, 262 Ga. 551 (2) (422 SE2d 555) (1992). And while HCWSA is liable for damage to the property that may have occurred, the Patricks were given the opportunity to claim such consequential damages at trial. In addition, the Patricks failed to present evidence of bad faith sufficient to state any claim on the part of HCWSA. Accordingly, we find that the trial court properly granted summary judgment on the counterclaims.

4. The Patricks contend that the trial court erred in striking portions of the value opinion testimony of their expert as well as portions of testimony by two of the Patricks regarding value.

The only relevant issue in the jury trial was the fair market value of the property at the time of the taking. See *Dept. of Transp. v. Petkas*, 189 Ga. App. 633, 638 (5) (377 SE2d 166) (1988). "Even where a different use is probable, the jury cannot evaluate the property as though the new use were an accomplished fact; the jury can only consider the new use to the extent that it affects the market value on the date of taking." (Citation, punctuation and emphasis omitted.) *Colonial Pipeline Co. v. Williams*, 206 Ga. App. 303, 304 (425 SE2d 380) (1992). The expert testimony in *Colonial* concerned the diminished retail value of a specific hypothetical lot subdivided on the property. This Court explained the proper focus of expert testimony in that case, by stating that the condemnee's expert "could have testified to his opinion of the value of the remaining land as of the date of taking based upon its enhanced value because of its adaptability as a residential subdivision[;] he could not testify as to the value before and after the taking based upon his assumption of the value as if the property had already been subdivided." Id. at 305.

The trial court struck the Patricks' testimony only to the extent it impermissibly gave an opinion of the land's value as if the reservoir was an accomplished fact and thus as if the property was lakefront property. The opinion of the Patricks' expert was also struck to the extent that it went into valuations not supported by the evidence and not properly before the jury. The witnesses were allowed, however, to place a valuation on the property that complied with the standards set out in *Colonial*. Therefore, we find no error.

5. In addition, we find that the trial court did not err in granting HCWSA's motion in limine on the issue of bad faith. When a condemnation award by a special master under Title 22 is appealed to the superior court, the jury trial is on the issue of value and damages alone; all nonvalue issues are for the trial court's determination. *City*

*of Savannah Beach v. Thompson*, 135 Ga. App. 63, 65 (2) (217 SE2d 304) (1975). Because the issue of bad faith in this case, whether asserted as a claim or a defense, does not pertain to the issue of value, it was for the court, not the jury. We do not agree with the Patricks that the case of *Aponte v. City of Columbus*, 246 Ga. App. 646 (540 SE2d 617) (2000), requires a different result. Accordingly, the trial court did not err in granting HCWSA's motion in limine.

6. The Patricks next take issue with the trial court's hearing evidence of certain witnesses outside the presence of the jury. The conduct of the trial is necessarily controlled by the trial judge, and such evidentiary matters are within the trial court's discretion. See *Ginn v. State*, 251 Ga. App. 159 (1) (553 SE2d 839) (2001); *Lassiter v. State*, 175 Ga. App. 338, 340 (333 SE2d 412) (1985). We find no abuse of discretion.

7. In addition, we find no merit to the Patricks' claim that the trial court mischarged the jury.

"A jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." *First Bancorp Mtg. Corp. v. Giddens*, 251 Ga. App. 676, 681 (6) (555 SE2d 53) (2001). And it is well settled that this Court must view a jury charge as whole when considering whether the charge contained error. See *Kodadek v. Lieberman*, 247 Ga. App. 606, 609 (1) (545 SE2d 25) (2001). Because the jury charge, when viewed as a whole, properly instructed the jury regarding the elements of the Patricks' claims as tailored to the evidence at trial, we find no error.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2002 —
RECONSIDERATION DENIED DECEMBER 10, 2002

*James D. Patrick, Jr.*, for appellants.
*Smith, Welch & Brittain, A. J. Welch, Jr., William A. White*, for appellee.