**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A1795.  EVANS  et  al.  v.  DEPARTMENT  OF
        TRANSPORTATION.

BARNES, Presiding Judge.

This case involves a dispute over the value of undeveloped timberland containing a subterranean mineral deposit that was condemned by the Georgia Department of Transportation ("DOT"). Following a jury trial, the jury awarded $50,000 to the condemnees, Dr. Frank O. Evans, Jr. and Robert Earl Evans, which was far below what they had sought as compensation for the condemned property. On appeal, the condemnees contend that the trial court erred by denying their motion in limine seeking to exclude any evidence or argument relating to the zoning of the condemned property; by allowing opinion testimony from the DOT's expert real estate appraisers regarding the reasonable probability of a change in zoning to permit mining on the property; and by giving allegedly inconsistent, erroneous charges to the jury relating to the issue of zoning and the valuation of land containing mineral

deposits. For the reasons discussed below, we discern no error by the trial court and affirm.

The record reflects that on February 20, 2009, the DOT filed a petition for condemnation and acquired a 12.087 acre portion of a larger tract of undeveloped timberland as part of a road construction project. The condemned property contained a subterranean deposit of kaolin, a mineral used in paint and other products. A kaolin mine that originally opened in the 1950s was located to the north of the condemned property. To the south of the condemned property was a residential neighborhood.

The condemned property was located within the city limits of Gordon, Georgia. In 1994, the City of Gordon enacted a zoning ordinance, and the condemned property was zoned agricultural. Under the zoning ordinance, mining was not permitted in an area zoned agricultural absent a special exception approved by the Gordon City Council. No special exception was ever approved for mining kaolin on the condemned property.

The DOT and the condemnees failed to reach agreement on the value of the condemned property. The DOT asserted that the highest and best use of the property was its present agricultural use as timberland, and that the kaolin deposit did not enhance the value of the property in light of the City of Gordon's zoning restrictions

2

on mining and the unlikelihood of a special exception being approved. In contrast, the condemnees asserted that the value of the condemned property was significantly enhanced by the kaolin deposit and was not affected by zoning considerations.

A jury trial ensued on the issue of valuation of the condemned property. Before the presentation of evidence, the condemnees moved in limine to exclude any evidence or argument related to zoning considerations, contending that zoning was irrelevant in condemnation cases involving mineral deposits because the minerals have intrinsic value as part of the land. The trial court denied the motion.

The DOT called two real estate appraisers as experts to testify on the issue of valuation, both of whom opined that the highest and best use of the condemned property was its current agricultural use as timberland. In reaching this conclusion, both appraisers discounted the presence of the kaolin deposit on the condemned property because it could not be mined under the City of Gordon's current zoning ordinance, which prohibited mining on property zoned agricultural. They further opined that based on their investigation into the matter, they did not believe that the Gordon City Council would grant a special exception to permit mining on the condemned property, and that the likelihood of such a grant was too remote and speculative to enter into their valuation of the property. The appraisers distinguished

the condemned property from the kaolin mine operated to the north of the property because the other mine had been grandfathered in to the City of Gordon's zoning ordinance, and because the condemned property abutted a residential neighborhood that would be negatively impacted by the construction of a mine. Based on these conclusions, the first appraiser valued the condemned property at $27,196. The second appraiser valued the condemned property at $26,591, but also determined that there was an additional $4,409 in consequential damages to the condemnees' remaining land.

After the DOT concluded its case in chief, the condemnees called two expert witnesses to address the issue of valuation, a minerals engineer and a real estate appraiser. The minerals engineer testified that he had drilling samples taken from the condemned property, that he tested the kaolin found in the samples, and that the kaolin was of sufficient quality to be merchantable and marketable for use in paint products. Taking into account the mineral engineer's evaluation of the kaolin deposit, the real estate appraiser valued the condemned property at $1,132,485, plus an additional $704,000 in consequential damages, based on his opinion that the property was significantly enhanced by the value of the kaolin. Both experts believed that the City of Gordon would not restrict kaolin mining on the condemned property, based

4

on information they had learned from a former city zoning administrator, and given that the aforementioned kaolin mine was already being operated within city limits to the north of the condemned property.

Following the presentation of the conflicting expert testimony and the parties' closing arguments, the trial court gave its charge to the jury, including a charge on the relevance of zoning considerations over the objection of the condemnees. The jury thereafter returned a verdict valuing the condemned property at $50,000, and the trial court entered final judgment in that amount. This appeal by the condemnees followed.

1. The condemnees argue that the trial court erred in denying their motion in limine seeking to exclude any evidence or argument relating to zoning. According to the condemnees, zoning is not a relevant factor for consideration by the jury in valuing property in condemnation cases involving mineral deposits.

"A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. Irrelevant evidence that does not bear directly or indirectly on the questions being tried should be excluded." (Punctuation and footnote omitted.) *CNL APF Partners, LP v. Dept. of Transp.*, 307 Ga. App. 511, 513 (3) (705 SE2d 862) (2010). The grant or denial of a motion in limine is reviewed only for an abuse of discretion. Id. We conclude that

5

the trial court did not abuse its discretion in ruling that zoning considerations could be considered by the jury.

"The sole issue to be determined in a condemnation matter is the just and adequate compensation due for property taken." (Punctuation and footnote omitted.) *CNL APF Partners, LP*, 307 Ga. App. at 515 (4). "Generally, just and adequate compensation is the fair market value of the condemned property at the time of taking." *Canada W., Ltd. v. City of Atlanta*, 169 Ga. App. 907, 909 (1) (315 SE2d 442) (1984). "Fair market value is defined as the price that a seller who desires but is not required to sell and a buyer who desires but is not required to buy would agree is a fair price after due consideration of all the elements reasonably affecting value." (Citation and punctuation omitted.) *Thornton v. Dept. of Transp.*, 275 Ga. App. 401, 404 (2) (620 SE2d 621) (2005).

One of the elements that reasonably may affect the value of the condemned property and should be considered by the jury is the presence of mineral deposits. See *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 269 (476 SE2d 722) (1996); *Dept. of Transp. v. Bacon Farms, L.P.*, 270 Ga. App. 862, 863-864 (1) (608 SE2d 305) (2004); *Gunn v. Dept. of Transp.*, 222 Ga. App. 684, 685 (1) (476 SE2d 46) (1996); *Williams v. Mayor, etc., of Carrollton*, 195 Ga. App. 590 (2) (394 SE2d 389) (1990). But it is

also well established that in determining what constitutes just and adequate compensation, "the jury may consider existing zoning and possible or probable future zoning changes which are sufficiently likely to have an appreciable influence upon the present market value" of the condemned property. *McDaniel Enterprises v. Gwinnett County*, 162 Ga. App. 419 (291 SE2d 738) (1982). See *Unified Government of Athens-Clarke County v. Watson*, 276 Ga. 276, 276-277 (577 SE2d 769) (2003); *Hall County v. Merritt*, 233 Ga. App. 526, 527 (1) (504 SE2d 754) (1998); *Civils v. Fulton County*, 108 Ga. App. 793, 797 (2) (b) (134 SE2d 453) (1963). Hence, evidence regarding the City of Gordon's zoning ordinance, and the reasonable probability that a special exception for kaolin mining would be granted by the Gordon City Council in the future, was relevant to the jury's valuation of the condemned property in this case.

The condemnees argue, however, that zoning considerations are only relevant in condemnation cases that fall under the analysis employed in *Dept. of Transp. v. Benton*, 214 Ga. App. 221, 222-223 (1) (447 SE2d 159) (1994), where we found that the trial court erroneously allowed speculative evidence regarding the hypothetical future development of unimproved condemned property into subdivision lots. In *Benton*, we noted that a condemned property's mere potential adaptability to a

different residential or commercial use cannot form the basis for compensation unless the future use is so reasonably probable as to affect the property's present value. Id. According to the condemnees, a *Benton*-type analysis does not apply in condemnation cases involving mineral deposits, thereby precluding the consideration of zoning in such cases. In support of their contention, they rely on two cases involving mineral deposits, *Gunn*, 222 Ga. App. at 684-685 (1), and *Dept. of Transp. v. Sharpe*, 219 Ga. App. 466, 467-468 (2) (465 SE2d 695) (1995), overruled on other grounds by *Sharpe*, 267 Ga. 267.

It is true that *Gunn* and *Sharpe* state that a *Benton*-type analysis does not apply in condemnation cases involving mineral deposits. See *Gunn*, 222 Ga. App. at 685 (1)*; Sharpe*, 219 Ga. App. at 468 (2). But the implication of that statement is narrower than the condemnees contend because zoning was not an issue and was never mentioned in *Benton*. Nor was zoning an issue or mentioned in *Gunn* or *Sharpe*. In distinguishing *Benton*, this Court in *Gunn* and *Sharpe* was simply pointing out that mineral deposits are different from the hypothetical future residential or commercial development of condemned property because the deposits are an intrinsic characteristic of the property itself and thus have at least some inherent value. Nothing in *Gunn* or *Sharpe* suggests, however, that a jury should be precluded from

8

also taking into account zoning as part of its valuation of the condemned property containing the mineral deposits. Indeed, this Court in *Gunn* noted that the "possible future use" of the condemned property for mining of the mineral deposits was part of the "permissible analysis" by the jury in valuing the property, and that the trial court erred in giving a jury instruction that suggested otherwise. *Gunn*, 222 Ga. App. at 685-686 (1). This language from *Gunn* supports the conclusion that zoning should be considered in condemnation cases involving mineral deposits.[1]

Furthermore, allowing the jury to consider zoning in condemnation cases involving mineral deposits is consistent with the long-established "policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective minds in determining the just and adequate compensation to be paid the condemnee." (Punctuation and footnote omitted.) *Dept. of Transp. v. Southeast Timberlands, Inc.*, 263 Ga. App. 805, 808 (2) (a) (589 SE2d 575) (2003). See *Civils*, 108 Ga. App. at 796 (2) (b). It is also clear that a private party negotiating to buy property containing mineral deposits would take zoning

---

[1] The condemnees also cite to *Clark v. City of Kennesaw*, 237 Ga. App. 42, 43 (1) (514 SE2d 701) (1999) in an effort to support their position. Yet, *Clark* did not address whether or to what extent zoning should be considered by the jury in mineral deposits cases.

restrictions into account in arriving at a purchase price, and thus "zoning restrictions . . . unquestionably affect the market value of property," the touchstone for determining just and adequate compensation. *Civils*, 108 Ga. App. at 797 (2) (b), quoting Nichols, *The Law of Eminent Domain* (3d ed.) § 12.322, p.237.

For these combined reasons, we conclude that, as in other types of condemnation cases, zoning considerations are relevant and material to a jury's determination of what constitutes just and adequate compensation to the condemnee in cases involving mineral deposits. The trial court therefore did not abuse its discretion in denying the condemnees' motion in limine and allowing evidence and argument regarding the City of Gordon's zoning ordinance and the reasonable probability of a special exception being granted for kaolin mining.

2. The condemnees further argue that the trial court erred in permitting opinion testimony from the DOT's expert real estate appraisers concerning the reasonable probability that a special exception to the zoning ordinance would not be granted by the Gordon City Council to permit mining of the kaolin on the condemned property. According to the condemnees, the experts' testimony was improper because zoning considerations are not relevant in mineral deposits cases and the testimony was wholly speculative.

10

In condemnation cases, we will not disturb a trial court's decision to admit evidence pertaining to the likelihood of a change in zoning absent a manifest abuse of discretion. *United Government of Athens-Clarke County v. Watson*, 276 Ga. 276, 277 (577 SE2d 769) (2003). We conclude that no manifest abuse of discretion occurred in this case. For the reasons discussed supra in Division 1, evidence regarding zoning considerations is relevant in mineral deposits cases. And, as discussed below, the testimony of the DOT's experts was not wholly speculative.

An expert may not render an opinion that is wholly speculative or conjectural.[2] *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (632 SE2d 135) (2006); *Rios v. Norsworthy*, 266 Ga. App. 469, 473 (2) (597 SE2d 421) (2004). See also *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony."). But the fact that the expert's opinion is based partially on speculation goes to its weight rather than its admissibility. See *Layfield*, 280 Ga. at 850 (1) ("[T]he appropriate standard for assessing the admissibility of the

---

[2] Because the jury trial in this condemnation case was conducted in October 2013, the new Georgia Evidence Code applies. See Ga. Laws 2011, Act 52, § 101. But many cases decided under the former rules are still useful to our analysis regarding expert testimony and speculation. See Paul S. Milich, "Expert Witnesses – Examination at Trial," Courtroom Handbook on Georgia Evidence 299 (2014 ed.).

opinion of [an] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so.").

As previously noted, the DOT called two real estate appraisers to testify as experts at trial. The first appraiser described how he went about appraising the condemned property and discussed the information he gathered and people he interviewed upon which he based his opinion. According to the appraiser, he inspected the condemned property and adjoining parcels, reviewed the DOT's highway plans for the property, reviewed two mineral valuation reports regarding the kaolin deposits, reviewed the depositions of Dr. Evans and the condemnees' expert minerals engineer, and interviewed residential property owners as well as several city officials.[3] Based on his investigation, the appraiser concluded that the highest and

---

[3] We note that an expert properly may rely on inadmissible facts and data such as hearsay in reaching his opinion, "if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." (Citation omitted.) *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 812 (1) (b) (751 SE2d 589) (2013). See OCGA § 24-7-703 (providing in part that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, . . . facts or data [upon which the expert bases his opinion or inference] need not be admissible in evidence in order for the opinion or inference to be admitted"); *United States v. Garcia*, 447 F.3d 1327, 1336 (11th Cir. 2006) (noting that a witness testifying as an expert "may rely on information he received from other people if such sources of information were regularly relied upon by experts in his field") (citation and punctuation omitted). In their appellate brief, the condemnees do not address whether the opinions of the real estate appraisers were

best use of the condemned property was its current agricultural use as timberland; that it was unlikely that the Gordon City Council would grant a special exception to permit mining on the property and that any such possibility was too remote and speculative to enter into his valuation; and that the value of the property was $27,196. The expert distinguished the kaolin mine to the north of the condemned property on the ground that it had started operation in the 1950s and thus had been grandfathered in to the City of Gordon's zoning ordinance, which was enacted in 1994. The appraiser also noted that the condemned property abutted a residential neighborhood and served as a buffer, protecting the neighborhood from the existing kaolin mine.

The second appraiser testified that his investigation included an inspection of the condemned property, interviews with nearby residential property owners, an interview with the owner of the kaolin mine operated to the north of the property and observations of the mining operation conducted there, a review of aerial photographs of that mining operation, a review of two minerals valuations reports of the condemned property, a review of the DOT's highway plans for the property, and a review of the deposition testimony of Dr. Evans and of a city official involved in

based on "facts and data of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and thus have waived any argument on appeal with respect to that issue.

zoning decisions. Based on his investigation, the appraiser also concluded that the highest and best use of the condemned property was its current agricultural use as timberland, and he valued the property at $26,591, plus certain consequential damages to the condemnees' remaining land. As part of his valuation of the condemned property, the appraiser concluded from his investigation that it was unlikely that the Gordon City Council would grant a special exception to permit mining on the property, and that the likelihood of such a grant was too speculative to enter into his analysis. The appraiser opined that the condemned property was distinguishable from the kaolin mine operated to the north because the other mine had been grandfathered in to the zoning ordinance, and because the condemned property was in closer proximity to residential property owners who would be negatively impacted if mining occurred there.

Given this record evidence, we cannot say that the opinion testimony of the DOT's expert real estate appraisers regarding the likelihood of a change in zoning was wholly speculative. To the extent that the appraisers may have speculated to some degree in reaching their conclusions regarding the likelihood that a special exception would be granted for kaolin mining, that factor went to the weight of their testimony rather than its admissibility. See *Layfield*, 280 Ga. at 850 (1).

Relying upon *Fulton County v. Dangerfield*, 260 Ga. 665, 666 (1) (b) (398 SE2d 14) (1990), and *Stewart v. Atlanta Beef Co.*, 93 Ga. 12 (2) (18 SE 981) (1893), the condemnees argue that testimony regarding what a legislative body might do in the future is too speculative to be admissible. Those cases, however, stand for the narrower proposition that a legislator, or a witness who is a mere conduit for the opinion of a legislator, cannot testify regarding the subjective intent or motive of a legislative body in carrying out a particular act that has already been accomplished. This is because what "motivates one legislator to make a comment about a law is not necessarily what motivates fellow legislators to enact the law." *Goldrush II v. City of Marietta*, 267 Ga. 683, 692 (4) (482 SE2d 347) (1997). In contrast, our Supreme Court has held that a trial court did not abuse its discretion in allowing expert testimony that there was a reasonable probability that condemned property would be re-zoned, where the testimony was predicated on the expert's knowledge of the current zoning status of the property and an investigation into the property and the surrounding areas. See *Watson*, 276 Ga. at 277. See also *State Highway Dept. v. Hurt*, 121 Ga. App. 188, 189 (173 SE2d 279) (1970) (physical precedent only) (opinion testimony regarding probability of change in existing zoning restrictions was admissible); *Klumok v. State Highway Dept.*, 119 Ga. App. 505 (1) (167 SE2d 722)

15

(1969) (same). That is the situation here with the opinion testimony of the DOT's real estate appraisers, and thus we conclude that the trial court acted within its discretion in allowing their testimony related to zoning. See id.

3. The trial court charged the jury that in valuing the condemned property, it should consider the existence of the kaolin deposit on the property, regardless of whether the condemnees had mined it or had plans to mine it at the time of the taking. The trial court also charged the jury that in considering "*uses*" of the condemned property as part of its valuation of the property on the date of the taking, it could only consider uses that were lawful under the zoning ordinance in effect on that date, or uses for which there was a possibility or probability would become lawful under the zoning ordinance in the immediate future sufficient to have an effect on the value of the property. The condemnees argue that these jury charges were inconsistent and were an erroneous statement of the law applicable in condemnation cases involving mineral deposits. We are unpersuaded.

"A jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." (Citation and punctuation omitted.) *Ware v. Henry County Water & Sewerage Auth.*, 258 Ga. App. 778, 784 (7) (575 SE2d 654) (2002). But charges cannot be construed in isolation; "on appellate review, jury charges must be

16

read and considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *Georgia Clinic, P.C. v. Stout*, 323 Ga. App. 487, 496 (6) (747 SE2d 83) (2013).

Taken as a whole, the trial court's charges in this case were an accurate statement of the law applicable to condemnation cases involving mineral deposits. The trial court correctly charged the jury that it should consider the mineral deposits as part of its valuation of the condemned property, irrespective of whether the condemnees had mined the property or planned to mine it at the time of the taking. This charge was consistent with *Gunn*, where we indicated that mineral deposits have intrinsic value as part of the land that should be considered by the jury in valuing the condemned property, even if the condemnee never personally mined or had plans to mine the minerals as of the date of the taking. See *Gunn*, 222 Ga. App. at 685-686 (1). See also *Sharpe*, 219 Ga. App. at 468 (2).

At the same time, however, the fact that unmined mineral deposits on the condemned property have at least some intrinsic value does not rule out the jury also considering the *uses* to which the property could lawfully be put, including the mining of those deposits, as part of its calculation of just and adequate compensation.

We made that very point in *Gunn* when we indicated, as noted supra in Division 1, that the "possible future use" of the condemned property for mining of the mineral deposits was part of the "permissible analysis" by the jury in valuing the property. *Gunn*, 222 Ga. App. at 685 (1). Such an analysis necessarily requires a consideration of zoning, see supra Division 1, and the trial court's specific charge on zoning was an accurate statement of our law in condemnation cases. See, e.g., *Dept. of Transp. v. Jordan*, 300 Ga. App. 104, 105 (684 SE2d 141) (2009) (evidence regarding a potential future change in zoning is admissible and can be considered by the jury in condemnation cases, so long as the "change in zoning to allow the usage is probable, not remote or speculative, and is so sufficiently likely as to have an appreciable influence on the present market value of the property") (citation and punctuation omitted); *Dept. of Transp. v. Sconyers*, 151 Ga. App. 824, 826 (2) (261 SE2d 728) (1979) (charge on zoning in condemnation cases should reflect that the jury "must base its value as of the time of the taking [on] the present zoning" but can also take into consideration, "if not too remote and speculative, that there was a reasonable probability or possibility that the zoning restrictions may be in the near future repealed or amended so as to permit the use in question").

Accordingly, the jury charges on mineral deposits and zoning considerations, when construed together, were not conflicting and were an accurate statement of the law. In arriving at its ultimate valuation of the condemned property, the jury was properly allowed to consider the intrinsic value of the mineral deposits, as well as the possibility of lawfully mining those deposits under the present zoning ordinance or the grant of a special exception. We therefore discern no error by the trial court in its charges to the jury in this case.

*Judgment affirmed. Boggs and Branch, JJ., concur*.