A10A1152. SAVANNAH CEMETERY GROUP, INC. et al.
v. DePUE-WILBERT VAULT COMPANY et al.

(704 SE2d 858)

PHIPPS, Presiding Judge.

This is an appeal from an order permanently enjoining the enforcement of a rule established by a private cemetery owner to prohibit the use of concrete vaults in its cemeteries. For the reasons that follow, we affirm.

In 2008, the Savannah Cemetery Group, Inc., which owned five private cemeteries in the Savannah, Chatham County area (the "cemetery group") established a rule prohibiting the use of concrete burial vaults in its cemeteries, requiring instead steel or polymer vaults. The cemetery group notified local funeral homes of the rule.

Several businesses in the Savannah, Chatham County area, namely a concrete burial vault manufacturer, a concrete burial vault distributor and six funeral homes (collectively, the "vault/funeral group") filed an action to enjoin the cemetery group from implementing the rule, alleging that the rule violated the Georgia Cemetery and Funeral Services Act of 2000[1] (the "Cemetery Act"), and asserting that implementing the rule would interfere with the vault/funeral group's contractual and/or business relations with third parties. Following a nonjury trial, the trial court found that the vault rule was unreasonable and prohibited by the Cemetery Act, and entered an order permanently enjoining the cemetery group from banning the use of concrete vaults in its cemeteries. The cemetery group appeals.

1. The cemetery group contends that the trial court erred in finding that its rule banning concrete vaults in its cemeteries was unreasonable and prohibited by the Cemetery Act. We disagree.

We apply a de novo standard of review to any questions of law decided by the trial court; factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.[2] The clearly erroneous test is in effect the same standard as the any evidence rule, and we will not disturb fact

---

[1] OCGA § 10-14-1 et seq.
[2] *Memar v. Jebraeilli*, 303 Ga. App. 557 (694 SE2d 172) (2010).

findings by the trial court if there is any evidence to sustain them.[3]

OCGA § 10-14-16 (b) provides, in relevant part, that "[t]he owner of every cemetery shall have the ... right to establish reasonable rules and regulations regarding the type, material, design, composition, finish, and specifications of any and all merchandise to be used or installed in the cemetery." OCGA § 10-14-16 (a) provides that no such cemetery shall have the power to adopt any rule or regulation in conflict with any of the provisions of the Cemetery Act or in the derogation of the contract rights of lot owners or owners of burial rights. OCGA § 10-14-2 (b) provides that "every competent adult has the right to control the decisions relating to his or her own funeral arrangements."

Pursuant to the Cemetery Act, a cemetery owner has the right to establish reasonable rules regarding the type of material and composition of merchandise to be used or installed in the cemetery.[4] At issue, therefore, is what "reasonable" means within the context of OCGA § 10-14-16 (b).

"[I]n construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry."[5] Moreover, statutory construction must square with common sense and reasoning.[6] Also, the meaning of a statutory clause depends upon the intention with which it is used as manifested by its context and considered with reference to the subject matter to which it relates.[7] And, statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose.[8]

The Cemetery Act is intended to protect consumers and the public interest. For instance, the Cemetery Act provides that it is necessary, in the interest of the public welfare, to regulate preneed dealers[9] and cemetery companies, "to the extent necessary to protect the public from significant or discernible harm or damage and not in

---

[3] Id.

[4] OCGA § 10-14-16 (b).

[5] *In the Interest of T. H.*, 258 Ga. App. 416, 420 (2) (574 SE2d 461) (2002) (citations and punctuation omitted).

[6] Id.

[7] Id.

[8] Id.

[9] Under the Cemetery Act, "preneed dealer" means every person, other than a salesperson registered under Title 10, Chapter 14 of the Georgia Code, who engages, either for all or part of his or her time, directly or indirectly, as agent, broker, or principal in the retail business of offering, selling, or otherwise dealing in funeral services or burial services or funeral or burial merchandise which is not attached to realty or delivered to the purchaser at the time of sale. OCGA § 10-14-3 (31).

a manner which will unreasonably affect the competitive market."[10] It also requires the establishment of perpetual care cemetery trust funds to assure the reasonable care and maintenance of cemeteries to prevent significant emotional distress caused by poorly maintained cemetery grounds, and the establishment of preneed escrow accounts to protect preneed consumers from serious economic harm.[11] As stated above, it recognizes the right of competent adults to control the decisions relating to their own funeral arrangements,[12] and prohibits cemeteries to which its provisions apply from adopting rules in conflict with any of its provisions or in derogation of the contract rights of lot owners or owners of burial rights.[13] Moreover, the Cemetery Act provides, in relevant part, that whenever it appears to the Secretary of State that any person has engaged in, is engaging in, or is about to engage in any act, practice or transaction which is prohibited by OCGA § 10-14-1 et seq., the Secretary of State may issue an order if he or she deems it to be appropriate *in the public interest or for the protection of consumers*, prohibiting the continuation of such act, practice or transaction.[14]

The evidence presented during the bench trial included the following. The cemetery group owned and operated five cemeteries in Chatham County; Lawrence Nikola, Jr., who owned the cemetery group cemeteries, "guess[ed]" that the cemetery group properties comprised all the private cemeteries in Chatham County, though there was also evidence suggesting that there were other cemeteries in the area; approximately 50 percent of the burials conducted by the three local funeral home operators who testified occurred in the cemetery group's cemeteries; concrete vault sales accounted for approximately 95-99 percent of the vault sales in the area — families were "accustomed to [concrete] and they have faith in it and they believe in it," and even when other types of vaults were offered, concrete vaults were the most popular; the cost of installed concrete vaults was less than the cost of installed polymer or steel vaults; concrete vaults were more suitable than polymer or steel vaults given the soil composition in the area; concrete vault sales were predominantly made by the DePue-Wilbert Vault Company and Harry Reita; the funeral home appellees were parties to hundreds of outstanding preneed contracts in which individuals with burial

---

[10] OCGA § 10-14-2 (a).

[11] OCGA §§ 10-14-2 (a); 10-14-4 (b) (1) (O); 10-14-6; 10-14-7.

[12] OCGA § 10-14-2 (b).

[13] OCGA § 10-14-16 (a). See also *Ga. Cemetery Assn. v. Cox*, 403 FSupp.2d 1206, 1210-1211 (II) (A) (N.D. Ga. 2003), aff'd in 353 F3d 1319 (11th Cir. 2003) (purpose of Georgia's Cemetery Act is to protect consumers and the public welfare, health and safety).

[14] OCGA § 10-14-19 (a) (1) (cited in relevant part).

rights in the cemetery group cemeteries had selected and purchased concrete vaults for interment therein; and enforcement of the rule would disrupt or destroy business relationships between the funeral home appellees and the vault distributor appellees, disrupt or damage goodwill, trust and the relationships between the funeral home appellees and their clients by forcing clients to buy vaults the funeral home appellees had previously represented as inferior, and place the funeral home appellees in breach of preneed contracts wherein their clients had already selected and paid for concrete vaults. There was also evidence that Nikola, the cemetery group's owner, was the exclusive retailer in Chatham County of steel and polymer burial vaults; that Nikola had stated that he intended to put Charles DePue (of DePue-Wilbert Vault Company) out of business; that damage Nikola claimed was being caused to the cemetery grounds by the transport of heavy concrete vaults could be prevented through the placement of plywood planks; and that Nikola had acted in bad faith.

The trial court's findings of fact, which included some though not all of this evidence, were supported by the record and were not clearly erroneous. In light of the legislative intent underlying OCGA § 10-14-16 (b), the trial court did not err in finding the rule banning concrete vaults in the cemetery group cemeteries unreasonable.

Citing *Cobb County-Kennestone Hosp. Auth. v. Prince*[15] and *Albany Surgical v. Dept. of Community Health*,[16] the cemetery group argues that the court was required to uphold the rule if the cemetery group presented *any* evidence to show that the rule was reasonable, and there was such evidence (e.g., transporting the heavier concrete vaults caused more damage to cemetery grounds than transporting polymer and steel vaults, and the cemetery group would raise more revenue selling polymer and steel vaults). The cemetery group's reliance on those cases is misplaced because those cases involve rules or regulations promulgated by administrative agencies or entities performing nonprofit governmental functions;[17] in contrast, the

---

[15] 242 Ga. 139 (249 SE2d 581) (1978).

[16] 257 Ga. App. 636 (572 SE2d 638) (2002).

[17] See *Cobb County-Kennestone Hosp. Auth.*, supra at 146 (1) (court's review of an administrative policy adopted by a hospital authority organized under the Hospital Authorities Law, Code Ann. § 88-1801 (OCGA § 31-7-70), was limited to a determination of whether hospital authority's action in adopting rule was arbitrary and unreasonable); see also OCGA § 31-7-75 (every hospital authority is deemed to exercise *public and essential governmental* functions); OCGA § 31-7-77 (no hospital authority shall operate any project for profit); *Albany Surgical*, supra at 637-640 (1) (a), (b) (all duly enacted regulations carry a presumption of validity, and courts should defer to the *agency* in matters involving the interpretation of the statutes which it is empowered to enforce; judicial review is limited to whether agency acted

cemetery group is composed of private for-profit businesses. The cemetery group cites no authority, and we have found none, providing that rules established by private entities such as the cemetery group carry a presumption of validity and that we must uphold those rules if there is any evidence of reasonableness. Under the circumstances presented here, and in light of the legislative intent of the Cemetery Act, we hold that the cemetery group's rule was not entitled to the deference afforded a rule promulgated by administrative agencies or governmental entities.

2. The cemetery group contends that the court erred in granting the permanent injunction because there was no evidence to support the judgment. We disagree.

Entry of a permanent injunction is appropriate only in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without an adequate remedy at law.[18] Equitable relief is a matter within the sound discretion of the trial court.[19] The grant of a permanent injunction is to be sustained on review unless the trial court has manifestly abused its discretion.[20] A trial court manifestly abuses its discretion when it grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity.[21]

The trial court did not manifestly abuse its discretion by entering a permanent injunction against the cemetery group.[22] Here, there was evidence supporting the trial court's judgment. For example, there was evidence that if implementation of the rule were not enjoined, the funeral home appellees would be forced to breach hundreds of existing preneed contracts, to the detriment of their business relationships and goodwill; that the vault company appellees could be forced out of business; that many area residents would have no choice but to purchase steel or polymer vaults; that the majority of the customers of the vault/funeral group witnesses preferred concrete vaults; and that concrete vaults were better suited for use in the Chatham County area. While there was evidence to the contrary, the resolution of factual disputes was for the judge as

---

beyond its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights; further, regulation must be upheld if agency presents any evidence to support the regulation).

[18] OCGA § 9-5-8; *Lewis v. City of Atlanta*, 274 Ga. 296, 297 (553 SE2d 611) (2001); *Conner v. Conner*, 269 Ga. 112, 114 (2) (499 SE2d 54) (1998).

[19] *Essex Group v. Southwire Co.*, 269 Ga. 553, 557 (2) (501 SE2d 501) (1998).

[20] *City of Atlanta v. Southern States Police &c.*, 276 Ga. App. 446, 458 (4) (623 SE2d 557) (2005); see *Goode v. Mountain Lake Investments*, 271 Ga. 722, 724 (2) (524 SE2d 229) (1999).

[21] *Harris v. Gilmore*, 265 Ga. App. 841, 843 (3) (595 SE2d 651) (2004).

[22] See *Southern States Police*, supra.

factfinder in a bench trial.[23]

3. The cemetery group contends that the court abused its discretion in allowing a witness for the vault/funeral group to testify as an expert on steel and polymer vaults or soil conditions because he was unqualified to do so, and his testimony was not the product of reliable principles and methods. There was no abuse of discretion.

The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court and, consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion.[24] Disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility.[25]

David Brugger testified that he had a degree in electrical engineering, that in college he had studied the composition, strength and durability of various materials, including metals and plastics, and that he was subsequently employed as a design engineer where he designed boiler systems and materials used for underground steel pipe systems and evaluated the life span of steel pipe in corrosive soil environments. He later owned and operated a vault company which manufactured concrete vaults. Brugger was also a funeral director and a cemetery owner; he had participated in disinterments of approximately 600 vaults, including vaults made of both steel and concrete. Brugger served as a plant certification officer for a burial vault association, which involved scientific testing to analyze the strength and quality of concrete burial vaults. The court permitted Brugger to testify as an expert.

Brugger opined that steel burial vaults were not suitable for interment in Chatham County due to the presence of corrosive elements in the soil, and that steel burial vaults would corrode and collapse under loads imposed by the earth and cemetery backhoes. Brugger also testified that steel and plastic vaults were not suitable for use in Chatham County due to the area's low elevation and high water table, and that he had concerns about the buoyancy of those vaults. Brugger added that concrete becomes stronger over time and can withstand the loads imposed by the earth and cemetery equipment.

YALE LAW LIBRARY

---

[23] See *Memar*, supra.

[24] *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008); see *Vaughn v. State*, 282 Ga. 99, 101 (2) (646 SE2d 212) (2007) (dispute over interpretation of test results was subject to cross-examination, and dispute over conflicting opinions went to weight and not admissibility of expert opinion); *Abramson v. Williams*, 281 Ga. App. 617, 619 (636 SE2d 765) (2006) (under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993), disputes as to an expert's credentials were properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility).

[25] *Agri-Cycle LLC*, supra.

OCGA § 24-9-67.1 (b) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.

The cemetery group contends that Brugger's opinion testimony was not the product of reliable principles and methods as required by the second part of the statute, but was "mere subjective belief or unsupported speculation."[26] The cemetery group asserts that Brugger's opinion was based upon facts about soil conditions and the water table in Chatham County generally rather than the specific conditions present in the cemetery group cemeteries; and that, based on his experience and the data upon which he relied, he was not qualified to compare the properties of steel vaults with metal pipes or testify regarding polymer vaults.

In addition to his training and experience set forth above, Brugger's opinion testimony was based upon an affidavit obtained from an engineer who served as head of the geotechnical division of the Georgia Department of Transportation regarding that Department's policy of requiring concrete rather than steel pipes in Chatham County due to the corrosive elements in the soil; a table of soil qualities in Chatham County; research articles relating to the performance of steel in marine and underground environments; reports on the life of steel vaults; and reports on steel pipes and the effects of corrosion on steel.[27] Brugger also relied on his experience in conducting tests on concrete vaults and in analyzing test results on polymer vaults, and his experience in the funeral and cemetery

---

[26] The cemetery group does not contend that the first or third parts of OCGA § 24-9-67.1 (b) were not satisfied, so we do not address those issues.

[27] Although not raised by the cemetery group, facts and data relied upon by an expert, in some cases, need not be admissible at trial. See OCGA § 24-9-67.1 (a); *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 275 (2) (658 SE2d 603) (2008); *Bd. of Regents &c. v. Casey*, 300 Ga. App. 850, 851 (1) (686 SE2d 807) (2009) (because that the part of OCGA § 24-9-67.1 (b) (1) requiring that experts rely on potentially admissible facts and data contradicts subsection (a) of the same statute, which plainly states that facts and data relied upon need not be admissible, the trial court had not erred in striking the limiting language of (b) (1) from the statute in determining whether OCGA § 24-9-67.1 was satisfied).

industry. Brugger's background in engineering and material composition also qualified him to testify about various loads imposed on cemetery grounds and weight and buoyancy characteristics of vaults of different materials. Brugger was cross-examined extensively at trial regarding his qualifications and the bases for his opinions and conclusions.

Contrary to the cemetery group's argument, Brugger's testimony regarding soil conditions, the water table in the cemeteries, and the qualities of steel and polymer vaults was not based upon "mere subjective belief or unsupported speculation." The appropriate standard for assessing the admissibility of the opinion of the expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so;[28] clearly, Brugger's testimony was not wholly speculative or conjectural. Moreover, even if his opinion was based on inadequate knowledge, that went to the credibility of the witness rather than the admissibility of the evidence.[29] The cemetery group has not shown that Brugger's testimony was not the product of reliable principles and methods. We discern no abuse of the trial court's discretion in qualifying him as an expert or allowing his testimony.[30]

4. The cemetery group contends that it was entitled to a new trial because it was "misled by the trial court's statement . . . that the issue was not whether concrete is better than either steel or polymer," and the court later based its ruling in part on a finding that concrete was a "much better choice." The cemetery group asserts that it relied on the trial court's statement that the issue of the relative merits of the materials was not relevant, and that had it been given "fair warning" that the court had changed its mind, it would have offered evidence on the issue. Specifically, it asserts that it was prepared to offer the testimony of two witnesses as to the qualities of steel and polymer burial vaults.

We are not convinced that the trial court misled the cemetery group as to whether such evidence would be considered. The court had stated early in the trial that the qualities of the various vault materials "may have to do with reasonableness," that the court was not yet sure what evidence would be relevant, and that it was trying to "take in all the evidence" and then "sift through it." And, the court indicated that evidence of the suitability of the various vault materials would be admitted when it permitted Brugger, Nikola and

---

[28] *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006); *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 691 (12) (689 SE2d 62) (2009).

[29] See *Layfield*, supra at 851 (1).

[30] See *Dept. of Transp. v. Miller*, 300 Ga. App. 857, 861-862 (2) (a) (686 SE2d 455) (2009).

other witnesses to give such testimony. The cemetery group has not shown from the record that the court indicated that witnesses would not be permitted to testify regarding the qualities of the various vault materials and then changed its position without so informing the cemetery group.[31]

Moreover, the cemetery group did not attempt to introduce the purported expert testimony and neither sought nor obtained a ruling on its admissibility. This court has the authority to review rulings of the trial court, and given the cemetery group's failure to secure a ruling on the admissibility of the testimony, we find no grounds for reversal.[32]

5. The cemetery group contends that the court contradicted itself in granting a permanent injunction in the original order and then stating in the order denying the motion for new trial that the vault/funeral group had standing to bring actions for tortious interference with contract. The cemetery group asserts that if the vault/funeral group had an adequate remedy at law, then no injunction should have been granted. We disagree.

In this case, the tortious interference with business and contractual relations claims formed only part of the basis for the petition for injunctive relief. In fact, the trial court granted the injunction based upon a different ground — that the rule was unreasonable and prohibited by the Cemetery Act. There was evidence that there was no adequate remedy at law in that, among other things, the ban on concrete vaults would effectively deny consumers the freedom to make decisions about burial vault materials, particularly when many consumers had already made those decisions by contract or had traditionally made them in a manner inconsistent with the new cemetery rule banning concrete vaults. That the court has stated, in dicta, that the plaintiffs may also have had standing to assert one or more other claims does not mean that the court was not authorized to prevent irreparable injury based on another ground. The remedy at law must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.[33] Based on the evidence presented, the court did not abuse the broad discretion afforded it in fashioning an

---

[31] Compare *Perryman v. Pope*, 102 Ga. 502, 504 (31 SE 37) (1897) (Supreme Court disapproved action of trial court in sustaining objection to testimony of defendant's witness, then later recalling the ruling so as to allow the jury to consider the testimony, without notifying defense attorney who was making closing argument; trial court should have formally announced change in ruling in presence and within hearing of jury, though the irregularity was not sufficient cause for a new trial).

[32] See generally *Dept. of Transp. v. Crowe*, 299 Ga. App. 756, 758 (683 SE2d 695) (2009).

[33] *Owens v. Ink Wizard Tattoos*, 272 Ga. 728, 729 (533 SE2d 722) (2000).

equitable remedy.[34]

6. The cemetery group contends that the injunction is overly broad in that it purports to enjoin any possible future bans on concrete vaults by the cemetery group. In its order, the court stated: "Defendants are permanently enjoined from implementing a concrete vault ban, in any form, in any [of] their five private cemeteries in Savannah, Chatham County, Georgia." The injunction is limited to the permanent banning of concrete vaults in the cemetery group's cemeteries. The cemetery group has offered no suggested terminology which would cure the alleged broadness.[35] The authority upon which the cemetery group relies does not support its claim that the injunction is overly broad in this case[36] or that it should have been more narrowly drawn.[37]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED DECEMBER 1, 2010.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, Zipperer, Lorberbaum & Beauvais, Eric R. Gotwalt*, for appellants.

*Inglesby, Falligant, Horne, Courington & Chisholm, Owen C. Murphy, Carrie H. Bacon*, for appellees.

---

[34] See generally *Goode*, supra; *Essex Group*, supra at 555.

[35] See *Gen. Refractories Co. v. Rogers*, 240 Ga. 228, 235-236 (5) (239 SE2d 795) (1977).

[36] See *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 691 (6) (681 SE2d 122) (2009) (injunction was overreaching insofar as it required defendant to, among other things, collect and remit taxes in the future; but the defendant had elected by virtue of its contracts to collect taxes and could change its business practices in that regard; the trial court was therefore directed to modify the injunction to reflect that fact); *Columbia County v. Doolittle*, 270 Ga. 490, 493 (3) (512 SE2d 236) (1999) (case remanded for a more narrowly-drawn injunction where county was ordered to return water flow to plaintiff's property to pre-development level — "an impossible . . . mandate" — and to limit sediment to a particular tonnage, when the trial court's findings supported enjoining the county from maintaining a defective drainage system, allowing excessive erosion and sedimentation onto the plaintiff's land, and using plaintiff's land as a retention pond).

[37] See *Bd. of Commrs. &c. v. Stewart*, 284 Ga. 573, 575 (3) (668 SE2d 644) (2008). Compare *Rhodes v. Bd. of Health &c.*, 270 Ga. 565, 566 (512 SE2d 890) (1999) (case remanded where injunction was overly broad because it permanently enjoined homeowner from interfering in any manner with the operation, use and maintenance of association's sewage system; trial court had not considered whether homeowner was also entitled to injunction preventing association from discharging sewage onto his property and had the right to remove the system and sewage from his property in a lawful manner).