**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A1891. WINSLETT v. GUTHRIE.

MCFADDEN, Judge.

This discretionary appeal concerns Bonnie Winslett's attempt to have a default judgment against her either set aside or vacated after the end of the term of court in which the trial court entered the judgment. There is no dispute that the plaintiff, Terry Guthrie, served Winslett with the complaint or that Winslett failed to file any defensive pleadings before the default judgment was entered. Winslett, however, argues that the default judgment is fundamentally unfair and must be set aside or vacated for two main reasons – because she was mentally incompetent and because she was not notified of the entry of the default judgment. But as detailed below, the trial court found that Winslett was *not* mentally incompetent, and there was evidence to support that finding. And Winslett's various arguments pertaining to her failure to

receive notice do not demonstrate a ground for either setting aside or vacating a judgment outside the term of court in which it was entered. Accordingly, we affirm.

1. *Facts and procedural history.*

On February 26, 2012, Winslett and Guthrie were involved in a vehicular collision in which Winslett was driving a car she did not own and Guthrie was riding a bicycle. In May 2012, Guthrie filed a personal injury action against Winslett in the Superior Court of Muscogee County and served the complaint on her. Winslett did not answer or otherwise respond to the complaint. On Wednesday, August 1, 2012, the trial court entered a default judgment of $2,916,204 against Winslett. In the judgment, the trial court ordered Guthrie to provide Winslett a copy of the order entering the judgment by certified mail. A new term of court began the following Monday. See OCGA § 15-6-3 (8) (D) (regarding terms of court for Superior Court of Muscogee County).

Guthrie did not provide Winslett with a copy of the default judgment. He represents this was because he could not locate her. Instead, on August 8, 2012, he sent a copy of the judgment to the insurance carrier that had issued coverage on the car Winslett had been driving. An attorney provided by the insurance carrier to represent Winslett located her on September 20, 2012. On September 28, 2012,

2

through that attorney, she moved to set aside or vacate the default judgment, arguing among other things that she was mentally incompetent and had not received notice of the judgment.

At a hearing on Winslett's motion, the parties presented conflicting evidence concerning her mental competence. The trial court subsequently denied the motion.

2. *Winslett's mental competence.*

Winslett argues that the trial court should have set aside the default judgment because she was mentally incompetent when she was served with the complaint and when the judgment was entered against her, rendering that judgment voidable. See *Keith v. Byram*, 225 Ga. 678, 679 (1) (171 SE2d 120) (1969) (a "judgment rendered against an insane person who has no legal guardian and for whom no guardian ad litem has been appointed for the purpose of appearing for him in that proceeding is voidable, even in a case where the insane person was represented by counsel") (citation omitted); *Chapman v. Burks*, 183 Ga. App. 103, 104 (1) (357 SE2d 832) (1987) (explaining that the term "insane person" and the term "mentally incompetent person" mean the same thing). The trial court instead found that Winslett was not mentally incompetent. Because the trial court acted as factfinder in making this determination, we will not disturb its findings on appellate review if they are

3

supported by any evidence. See *Savannah Cemetery Group v. DePue-Wilbert Vault Co.*, 307 Ga. App. 206-207 (1) (704 SE2d 858) (2010).

The parties have not pointed to any authority on how to determine if a person is mentally incompetent for the purpose of rendering a judgment voidable. But in another civil context, we have defined mental incompetence as "whether the individual, being of unsound mind, could not manage the ordinary affairs of his life. It means an individual lacking in the capacity to manage his own affairs. . . . [E]vidence that he was without sufficient mental capacity to perform or understand his conduct during the relevant period would meet the test." *Chapman*, 183 Ga. App. at 105 (1) (citations and punctuation omitted).

Applying this definition, we find evidence supporting the trial court's finding that Winslett was not mentally incompetent. Although Winslett had a lifelong history of significant mental illness, she had never been adjudicated or declared mentally incompetent. Two attorneys who had represented her in guilty pleas to criminal charges in 2011 and 2012 testified that, as a general matter, they would not advise a client to proceed with a guilty plea if she had appeared mentally incompetent to them. The law enforcement officer who served Winslett with the complaint in this case testified that she did not appear to him to be mentally incapacitated. A corrections

4

officer who had interacted with Winslett in jail during a period of time ending in early 2012 testified that Winslett asked cogent questions about her criminal case, her sentence, and her monetary account at the jail.

Finally, a psychiatrist testified that Winslett displayed borderline intellectual functioning in her video-recorded deposition, which the psychiatrist watched. He explained that persons with such functioning "are usually responsible for themselves, they have jobs, they marry, they don't have guardians." He testified that he "d[id]n't see anything that indicates that [Winslett] is functionally and mentally a minor child," and he disputed portions of the affidavit of a psychiatrist who had treated Winslett sporadically over the years and who had averred that she was not capable of managing her affairs or understanding the need to respond to the lawsuit. Winslett argues that the trial court "erred in denying [her] *Daubert* challenge," in which she argued that the psychiatrist's testimony was inadmissible because his review of her video-recorded deposition provided an insufficient foundation for his opinion. See *Daubert v. Merrill Dow Pharmaceuticals*, 509 U. S. 579, 592-593 (C) (113 SCt 2786, 125 LEd2d 469) (1993) (describing trial court's role in ensuring that expert evidence heard by factfinder meets certain threshold requirements). The admissibility of the psychiatrist's testimony rested "in the broad discretion of the court, and consequently,

5

the trial court's ruling thereon cannot be reversed absent an abuse of discretion." *Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008) (citation and punctuation omitted). "Our review of the record shows no abuse of discretion in this case, particularly since the trial court, as the trier of fact in the [hearing], was free to accept the parts of [the psychiatrist's] testimony that were credible and useful and to reject the rest." *Walls v. Walls*, 291 Ga. 757, 758-759 (3) (732 SE2d 407) (2012) (citation omitted).

It was for the trial court as factfinder to assess the credibility of the conflicting evidence on Winslett's mental competency. *Savannah Cemetery Group*, 307 Ga. App. at 206-207 (1). We find no error in the trial court's determination that she was mentally competent. Accordingly, the trial court did not err in denying her motion to set aside the judgment on the ground of mental incompetency.

3. *Lack of notice as a ground to set aside the default judgment.*

Winslett argues that the trial court should have set aside the default judgment because she was not provided with notice of the entry of that judgment. Because the term of court in which the trial court entered the judgment had ended when Winslett moved to set it aside, the trial court was permitted to set aside the judgment only under OCGA § 9-11-60. *Miranda v. Stewart*, 312 Ga. App. 290, 291 (718 SE2d 123)

6

(2011). Winslett contends that the set aside was warranted under both OCGA § 9-11-60 (d) (2) (permitting motion to set aside based on "[f]raud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant") and OCGA § 9-11-60 (d) (3) (permitting motion to set aside based on "[a] nonamendable defect which appears upon the face of the record or pleadings"). But neither subsection provides a ground for setting aside the judgment in this case.

(a) *OCGA § 9-11-60 (d) (2)*.

OCGA § 9-11-60 (d) (2) provides that a motion "may be brought to set aside a judgment based upon . . . [f]raud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant[.]" Winslett argues that she is entitled to have the default judgment set aside under this subsection because Guthrie intentionally delayed notifying her about the judgment until after the end of the term of court in which the judgment was entered, despite being ordered to do so by the trial court. She argues that this delay prevented her from asking the trial court to set aside the judgment within the term of court in which it was entered, when the trial court could have set the judgment aside under its broader, inherent power rather than the more limited grounds of OCGA § 9-11-60. See *Ammons v. Bolick*, 233 Ga.

7

234, 235 (1) (210 SE2d 796) (1974); *Miranda*, 312 Ga. App. at 291; *Lee v. Restaurant Mgmt. Svcs.*, 232 Ga. App. 902, 903 (1) (503 SE2d 59) (1998).

But even if Guthrie took some act in prosecuting his lawsuit that could be construed as a ground for setting aside the judgment under OCGA § 9-11-60 (d) (2), "the alleged [act] is not unmixed with the negligence or fault of [Winslett] in failing to interpose a defense to [Guthrie's] suit." *Lee*, 232 Ga. App. at 905 (2). Guthrie properly served Winslett with the complaint in the first instance, and, accordingly, Winslett was "charged under the law with the responsibility to ensure that an answer to the complaint was filed." Id. Because she failed to do so, OCGA § 9-11-60 (d) (2) does not authorize the resulting default judgment to be set aside. See *Lee*, 232 Ga. App. at 905 (2) (trial court erred in setting aside default judgment under OCGA § 9-11-60 (d) (2), because defendant's failure to ensure that complaint was answered constituted negligence or fault on defendant's part).

(b) *OCGA § 9-11-60 (d) (3).*

OCGA § 9-11-60 (d) (3) provides that a motion "may be brought to set aside a judgment based upon . . . [a] nonamendable defect which appears upon the face of the record or pleadings." Winslett cites our decision in *Moore v. Davidson*, 292 Ga. App. 57 (663 SE2d 766) (2008), for the proposition that her lack of notice of the entry

8

of the default judgment is such a nonamendable defect. But *Moore*, and the cases cited therein, are inapposite, because they concern the failure to provide a party with notice of the date of a trial or hearing, not the failure to provide a party with notice of the entry of a default judgment. See *Moore*, 292 Ga. App. at 58-60; see also *Wright v. Wright*, 270 Ga. 229, 230-231 (509 SE2d 902) (1998); *Coker v. Coker*, 251 Ga. 542, 543 (307 SE2d 921) (1983); *Taylor v. Chester*, 207 Ga. App. 217, 218 (427 SE2d 582) (1993); *Shelton v. Rodgers*, 160 Ga. App. 910, 911 (288 SE2d 619) (1982). We find no ground for applying OCGA § 9-11-60 (d) (3) in this case.

(c) *Other arguments*.

In her appellate briefs, Winslett makes various other arguments for a set aside: that the default judgment was not final until Guthrie sent it to her by certified mail; that the trial court improperly relieved Guthrie of his responsibility to provide notice when the trial court denied the motion to set aside; that the default judgment awarded excessive damages; and that enforcing the default judgment was fundamentally unfair and deprived her of due process.

None of these arguments supports reversal. We cannot consider Winslett's argument that the default judgment was not final, because she did not raise this issue in the trial court. See *Nairon v. Land*, 242 Ga. App. 259, 261 (3) (529 SE2d 390)

9

(2000). Similarly, we cannot consider her "due process argument [because it] was not ruled upon by the trial court, nor was the failure to rule thereon enumerated as error." *Chanin v. Bibb County*, 234 Ga. 282, 292 (5) (216 SE2d 250) (1975). Her remaining arguments do not address the dispositive question in this case – whether she has shown one of the limited statutory grounds of OCGA § 9-11-60 (d) for setting aside a judgment after the end of the court term.

4. *Lack of notice as a ground to vacate the default judgment.*

Alternatively, Winslett argues that the trial court should have vacated the default judgment under OCGA § 9-11-60 (g), which permits a trial court to correct, at any time, "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission[.]" She argues that the trial court then could reenter the default judgment, she could refile her motion to set aside within the same term of court as the reentered judgment, and the trial court could set aside the judgment on grounds other than those provided in OCGA § 9-11-60 (d). See *Miranda*, 312 Ga. App. at 291 (trial court has discretion to set aside judgment within same term of court for "meritorious reasons").

We cannot agree. Guthrie's failure to comply with the notification requirement of the trial court's order is not the type of error that would permit the trial court to

vacate the judgment under OCGA § 9-11-60 (g). Where the trial court is required to notify a party of a judgment, but fails to do so, then the trial court may vacate the judgment under OCGA § 9-11-60 (g) and then reenter it. See *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 148-149 (1) (269 SE2d 426) (1980) (construing earlier version of statute). This "serves to correct the prejudice caused by a *trial court's error* in failing to notify the losing party of the judgment." *Vangoosen v. Bohannon*, 236 Ga. App. 361, 362 (1) (511 SE2d 925) (1999) (emphasis supplied).

But Winslett has not shown that the trial court erred in failing to notify her of the judgment, because the trial court had no responsibility to give her such notice. Although OCGA § 15-6-21 (c) requires a judge "to file his or her decision with the clerk of the court in which the cases are pending and to notify the attorney or attorneys of the losing party of his or her decision," it also specifies that "[s]aid notice shall not be required if such notice has been waived pursuant to subsection (a) of Code Section 9-11-5." OCGA § 9-11-5 (a) provides that "the failure of a party to file pleadings in an action shall be deemed to be a waiver by him or her of all notices, including notices of . . . entry of judgment[.]" Under these Code sections, Winslett had no right to receive notice from the trial court of the entry of the default judgment.

Cases cited by Winslett do not provide otherwise. *Vangoosen*, supra, 236 Ga. App. 361, in which we stated that OCGA § 15-6-21 (c) required the trial court to serve a defendant with notice of entry of a default judgment, was decided under a prior version of that Code section that the General Assembly later struck and replaced in its entirety. See Ga. L. 2001, p. 854, § 2. One of the General Assembly's purposes in doing so was "to provide that notification is not required when service has been waived by law." Ga. L. 2001, p. 854. Consequently, *Vangoosen* offers no support for the proposition that, under current law, the trial court has a duty to give notice of the entry of a default judgment to the defendant who failed to file defensive pleadings.

Winslett also points to the Supreme Court's decision in *Anderson v. Anderson*, 264 Ga. 88 (441 SE2d 240) (1994), to argue that her failure to file defensive pleadings did not waive her right to notice, but that decision is inapposite. In *Anderson*, the Court declined to find a waiver under OCGA § 9-11-5 (a) where the trial court assured a party in open court that he would receive notice of a final hearing despite having failed to file defensive pleadings. *Anderson*, 264 Ga. at 89-90. The defendant's reliance upon the trial court's assurance was central to that decision. Unlike the defendant in *Anderson*, Winslett has not shown that she received any assurance from the trial court regarding notice of the entry of a judgment against her,

12

much less that she relied on such assurance. From the record, it appears that the only statement of the trial court regarding the notice Winslett was to get of the entry of judgment against her was contained in that judgment itself, a document that Winslett did not see.

Consequently, the trial court had no statutory duty to notify Winslett of the default judgment in this case. And Winslett has offered no support for the proposition that, by ordering *Guthrie* to provide her with a copy of the judgment, the trial court also took upon itself a duty to provide notice to Winslett. These circumstances do not implicate the rule set forth in *Cambron*, supra, 246 Ga. 147, which concerns a trial court's failure to satisfy its own obligation to notify a party of a judgment. Simply put, Guthrie's failure to comply with a provision of the trial court's order was not a clerical mistake or error within the default judgment that would permit the trial court to vacate the judgment under OCGA § 9-11-60 (g).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*