**FOURTH DIVISION
DILLARD, C. J.,
DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A1900. WHITE HORSE PARTNERS LLLP et al. v. MONROE
    COUNTY BOARD OF ASSESSORS.

DILLARD, Chief Judge.

In this property-tax appeal, White Horse Partners LLLP and Loblolly Investments LLLP ("Appellants") challenge an adverse decision from the Monroe County Board of Equalization ("the Board"). Prior to a jury trial in an appeal of the Board's tax assessment of their property, Appellants filed motions in limine as to the Board's testimony and evidence on the value of standing timber, and the trial court denied those motions. A jury then returned a verdict upholding the Board's assessment of Appellants' property. Appellants now argue that the trial court erred in failing to exclude (1) the expert testimony proffered by the Board regarding

estimates of timber value and (2) inadmissible hearsay testimony of out-of-court appraisers. For the reasons set forth *infra*, we affirm.

The record shows that Appellants own a 250-acre tract of timberland in Monroe County, the use of which has, for decades, been continuously devoted to the commercial production of timber. In 2008, as part of a countywide revaluation of rural properties, the Board increased the property tax fair market value for Appellants' land from the 2007 rate of $309,175 to a new rate of $834,900, which was later reduced to $626,200 after an appeal.[1] Appellants testified that their line-item expenses for property taxes rose to $25.87 per acre, and they subsequently appealed the value to the superior court.[2]

Due to the scale of the project and level of expertise required, the Board's 2008 revaluation of rural properties was conducted by a third-party appraisal firm. According to the president of that firm, a mass appraisal of all agricultural tracts in

---

[1] This $208,700 reduction was based upon the presence of a railroad track that was not noticed during the initial physical inspections of the property during the revaluation.

[2] Appellants' case was selected to determine the outcome of property-value appeals by other plaintiffs who owned other properties in Monroe County for 2008 to 2010, and the verdict as to property value that was returned in Appellants' case thereafter applied to all other plaintiffs and properties that agreed to be bound by the outcome.

the County was conducted by extrapolating from twenty-three comparable sales. Prior to using a comparable sale in the study, the firm would attempt to remove the value of standing timber from the sale price in order to reach the "bare land value." Thus, on the spreadsheet compiled by the firm president, the estimated value of standing timber was the difference between the comparable properties' sale price and their adjusted sale price.

Prior to trial, Appellants filed motions in limine to exclude the firm president's testimony and evidence as to estimates of timber value on the basis that his estimates were too speculative. And after hearing argument on the motions, the trial court denied them. Then, at trial, the court also permitted the Board to present, over objection, rebuttal testimony on the value of timberland that was based upon a report the court did *not* admit into evidence but about which it permitted the Board's witness to testify. Ultimately, the jury returned a verdict upholding the Board's 2008 assessment of the Appellants' property, and the trial court then denied Appellants' motion for new trial. This appeal follows, in which the Appellants challenge the trial court's denial of their motions in limine and the admission of certain evidence.

As a general rule, admission of evidence is "a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that

discretion absent evidence of its abuse."[3] With this guiding principle in mind, we turn now to Appellants' enumerations of error.

1. First, Appellants argue that the trial court erred in failing to exclude the estimates of timber value proffered by the Board's expert when they were too speculative. More specifically, Appellants argue that the trial court erred in admitting the testimony of the firm president as an expert. We disagree.

As an initial matter, we note that Appellants refer to and rely upon OCGA § 24-9-67.1, a statute that was repealed by the enactment of our new Evidence Code (which became effective January 1, 2013, and which applies in this case because it was tried *after* that date).[4] Georgia's expert-witness requirements are now codified in OCGA § 24-7-702. We take this opportunity, yet again, to remind our trial courts and lawyers of the importance of relying upon the new Evidence Code, as well as its

---

[3] *Jones v. Chatham County Bd. of Tax Assessors*, 270 Ga. App. 483, 486 (3) (606 SE2d 673) (2004) (punctuation omitted).

[4] *See* Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

accompanying case law, in addressing evidentiary issues arising after the new code's effective date.[5]

To that end, OCGA § 24-7-702 (b) provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

In this case, Appellants (essentially) maintain that the testimony from the firm president failed to meet this criteria.

---

[5] *See, e.g., Belcher v. State*, 344 Ga. App. 729, 736 (2) (b) n.29 (812 SE2d 51) (2018); *accord Patch v. State*, 337 Ga. App. 233, 241 (2) n.21 (786 SE2d 882) (2016).

At the outset of his testimony, the firm president first described his education, training, and experience in forestry and conducting appraisals, including mass appraisals, and his experience testifying in court as an expert witness. Thereafter, the trial court permitted him to testify as an expert appraiser. The witness then provided additional details regarding his experience as a forester, and the court accepted him as an expert in forestry as well.

The firm president subsequently testified as to the revaluation that was conducted in 2008, in which his company used a "sales comparison approach." He testified that every single property was visited in person on two occasions, and then explained the characteristics considered when determining a property's fair market value. Importantly, the firm president testified that he personally valued *all* of the large-acreage agricultural tracts in Monroe County during the 2008 revaluation. And when compiling comparable sales, in order to calculate the timber values for those properties, he would either consult with a local forester or the property owners about their values, or, if that was not possible, conduct a "strip cruise" or "timber cruise" on the properties.[6]

---

[6] A "strip cruise" or "timber cruise" is used to "estimate the value of timber on a tract based on the amount, size, grade and accessibility of the timber." *Hart v. Hart*, 245 Ga. App. 734, 734 n.1 (538 SE2d 814) (2000); *accord Adams v. State*, 231 Ga.

With this information in hand, the firm president compiled a spreadsheet of Monroe County agricultural-tract sales in 2006 and 2007. In that spreadsheet, the "bare land value"—*i.e.*, the value of the land after subtracting the value of the timber—of the comparable-sale properties was reflected as the "adjusted sales price." And according to the list, the lowest per-acre sale of the comparable properties was almost double what Appellants claimed the subject property was worth per acre. In order to assist in completing a valuation of the subject-property (and the other properties during the revaluation), the witness used Georgia-specific appraisal software that was developed through the Georgia Department of Revenue, and he explained to the jury in detail the development of this software and how it works. Ultimately, the 2008 property valuations were reviewed and approved by both the Georgia Department of Revenue and the Department of Audits and Accounts, resulting in approval of the 2008 tax digest for Monroe County.

On cross-examination, when asked to again explain how the timber values were calculated, the firm's president testified that the values were "arrived at by research and by visiting the parcels, by having some of them cruised, by talking to two local foresters that are involved in transactions within the county. [And] some

App. 279, 282 n.1 (499 SE2d 105) (1998).

property owners sent us values in [ ] letters. There were multiple ways the timber values were arrived at." He was then further pressed about the "appraisal procedures manual" and its directives for establishing timber value, and he testified that his methods were consistent with the appraisal procedures manual's directives, which also permit multiple methods for estimating timber value if information from the property's buyer and seller is not available.[7] And although he could not recall in detail specifically how he reached the timber value for each of the comparable properties, he *repeatedly* testified, during extensive cross-examination and redirect, that it was done by one of the manners and in the method he previously described.

On appeal, Appellants are primarily concerned with the firm president's inability to recall specifically, with regard to each comparable sale, how he reached the estimated value of timber. Thus, as they did in their motion for new trial, Appellants challenge the reliability of the firm president's methodology. But as previously explained, the firm president testified that the comparable-sale valuations were completed in one of a few acceptable manners, and he described the methods

---

[7] *See* former Ga. Comp. R. & Regs. 560-11-10-.09 (3) (b) (2) (v) (2004) (providing for methods of calculating the value of standing timber, first by consulting with the buyer and seller and then using other methods if information from the buyer and seller is unavailable).

8

he followed. Accordingly, Appellants have failed to show that the expert's testimony was *wholly* cumulative or conjectural, which is the appropriate standard for assessing the admissibility of expert opinions.[8] And even to the extent that an expert's testimony is based *partially* on speculation, such a fact "goes to its weight rather than its admissibility."[9] Thus, the trial court did not abuse its discretion in permitting the firm president's testimony as to timber values when Appellants have not shown that the testimony was wholly speculative or conjectural, or that it was not the product of reliable principles and methods.[10]

---

[8] *See Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006) ("[T]he appropriate standard for assessing the admissibility of the opinion of [an] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so."); *Savannah Cemetery Group, Inc. v. DePue-Wilbert Vault, Co.*, 307 Ga. App. 206, 213 (3) (704 SE2d 858) (2010) (same).

[9] *Evans v. Dept. of Transp.*, 331 Ga. App. 313, 318 (2) (771 SE2d 20) (2015); *see Savannah Cemetery Group*, 307 Ga. App. at 213 (3) ("[E]ven if [an expert's] opinion was based on inadequate knowledge, that [goes] to the credibility of the witness rather than the admissibility of the evidence.").

[10] *See Evans*, 331 Ga. App. at 318-20 (2) (holding that trial court did not abuse its discretion by permitting expert to testify when it did not appear that her opinions were wholly speculative); *Savannah Cemetery Group*, 307 Ga. App. at 213 (3) (holding that trial court did not abuse its discretion by permitting testimony by expert when appellant did not show that testimony was wholly speculative or conjectural, or show that the testimony was not the product of reliable principles and methods). *Cf. Swint v. Mae*, 340 Ga. App. 480, 485-86 (2) (798 SE2d 23) (2017) (affirming trial court's exclusion of expert's testimony after concluding that the testimony was not

2. Next, Appellants argue that the trial court erred in permitting inadmissible hearsay testimony from the Board's rebuttal witness, which referenced and relied upon opinions from out-of-court appraisers that were contained in a report the trial court did *not* admit into evidence. Again, we disagree.

The record shows that, in rebuttal, the Board recalled a witness who was a forester, licensed real estate broker, and certified tax assessor. He was also the president of a timber company, and the current chairman of the Monroe County Board of Tax Assessors, which he initially joined in 2010. And during the course of the trial, he had an opportunity to search through records kept in the regular course of business of his timber company. In doing so, he located records related to the purchase of property in Monroe County, which included appraisals conducted on timberland in 2008. As a result, the Board wished to present testimony about these appraisals to rebut the Appellants' assertion that timberland in Monroe County in 2008 was worth $1,100 an acre.

Prior to further testimony about this newly discovered appraisal, Appellants objected on a number of grounds, one of which was that the document contained

"based on sufficient facts or data" because "[w]hen the basis of an expert's opinion is given and it appears that it is wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value" (punctuation omitted)).

10

inadmissible hearsay because the appraisal was conducted by another company, not by the witness or his company. Ultimately, the trial court ruled that the document itself would not be admitted but that the witness could testify about the conclusions reached in it.[11] And the witness thereafter testified that the appraisal conducted for his company in 2008 showed the average per-acre price of timberland in Monroe County varied from $2,275 to $5,850. He also testified this conclusion was almost exactly the same as that reached by the third-party company hired to conduct the revaluation for Monroe County during that same time period.

Appellants argue that the trial court erred in permitting the witness to testify about this document because it contained inadmissible hearsay—namely, the conclusions reached by out-of-court appraisers who were not available for cross examination. But even if the trial court erred in permitting the witness to testify about the contents of this document, his testimony as to the estimated value of timberland in Monroe County in 2008 was cumulative of other admissible evidence, *i.e.*, that of the witness discussed in Division 1, *supra*. And it is well established that admission

---

[11] At the motion-for-new-trial hearing, the trial court clarified that it had not admitted the record into evidence because the document had not been produced during discovery, but the court "didn't mind [the witness] testifying because it was the possible basis for his conclusions as to value."

of hearsay is harmless when "it is cumulative of legally admissible evidence showing the same fact."[12] Indeed, the complained-of testimony regarding the value of timber was brief, consisting of approximately one half-page in 21 pages of rebuttal testimony, whereas the same or similar facts were testified to at length earlier in the trial by other witnesses (including the president of the firm that conducted the revaluation on behalf of Monroe County). Accordingly, this enumeration of error does not require reversal.[13]

For all these reasons, we affirm the trial court's denial of Appellants' motion for new trial.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[12] *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 450 (5) (a) (662 SE2d 141) (2008).

[13] *See id.* (holding that trial court's admission of otherwise inadmissible hearsay was harmless when document contained nearly identical information to that of a legally admissible piece of evidence, rendering the evidence cumulative); *see also Smith v. Stacey*, 281 Ga. 601, 601-02 (1) (642 SE2d 28) (2007) ("The admission of hearsay testimony is harmless when it is cumulative of legally admissible evidence showing the same fact."). *Cf. A Child's World, Inc. v. Lane*, 171 Ga. App. 438, 442 (4) (319 SE2d 898) (1984) (holding that admission of inadmissible hearsay was not harmless when, although cumulative of admissible evidence, it was admitted to bolster otherwise *slight* evidence); *Thomas v. Emory Clinic, Inc.*, 321 Ga. App. 457, 464-65 (1) (d) (739 SE2d 138) (2013) (physical precedent only as to Div. 1 (d)) (holding that admission of inadmissible hearsay was not harmless when witness *repeatedly* made reference to inadmissible hearsay on the ultimate issue in the case).