**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2023**

# In the Court of Appeals of Georgia

A23A0148. EARLY v. MORGAN FLEET SERVICES, INC.

LAND, Judge.

On appeal from the grant of summary judgment to defendant Morgan Fleet Services in this negligence action arising from a school bus fire, plaintiff Armer Early argues that the trial court erred when it excluded her expert's opinion testimony and when it concluded that no genuine issue of fact remained as to Morgan Fleet's responsibility for the fire. We reverse the trial court's exclusion of the expert's testimony and remand for further proceedings on Morgan Fleet's summary judgment motion.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant

judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). We review a grant of summary judgment de novo to determine whether "the requirements of OCGA § 9-11-56 (c) have been met." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

Thus viewed in favor of Early, the record shows that on the morning of January 19, 2016, Early noticed a burning smell and smoke coming from the 1993 Ford bus no. 9337 that she was driving for Gwinnett County Schools. The heater was on at the time she noticed this burning smell and smoke. Early took the bus to the county maintenance center where it was inspected by a county mechanic. That mechanic concluded that the bus was low on antifreeze but found nothing else that concerned him. The mechanic added antifreeze, told Early that the bus had been low on antifreeze, which had caused the smoking, and stated that the bus was "ready to go." Although Early testified that the mechanic spent less than five minutes conducting this inspection, the mechanic testified that it took between 10 and 30 minutes.

That night, a Morgan Fleet worker arrived to inspect buses (as the company was required to do every 20 working days) and found nothing amiss with bus no. 9337. The owner of Morgan Fleet later told the County that the company had performed only a preliminary or "walk-around" inspection because they did not have

the bus's keys. The worker testified, however, and a printed report also showed, that he had performed a more extensive inspection and had found a power steering fluid leak and an oil leak, resulting in a "yellow tag" on the bus. Had Morgan Fleet found something more serious, the bus would have been "red-tagged" and taken out of service.

The following morning, January 20, 2016, was a cold one. Early checked the antifreeze level and saw that it was full. She then started the bus, turned on the heater, and let it idle for 25 minutes or so, 15 of which were spent in her car while the bus warmed up. As she sat in the driver's seat on returning from her car, she again smelled the odor she smelled the day before and then saw fire coming out from under the hood, at which point she ran to the back of the bus, opened the emergency exit, and jumped out, hurting her knee and her back as she landed on the ground. The bus was destroyed in the fire.

In August 2017, Early brought this action against Morgan Fleet, alleging that the company had failed to adequately inspect the bus as it was obligated to do under its contract with the County. The County, which is not a party to this suit, hired Charles Keene to determine the cause of the fire.

Keene, who was qualified as an expert in fire investigation and who had extensive experience specifically with determining the cause and origin of bus fires, reviewed maintenance records, interviewed Early and others, inspected the remains of the bus, and examined similar bus models. Keene found no evidence that the fire was caused by a fuel, electrical, or mechanical problem and therefore ruled those possibilities out as potential causes of the fire. Finding evidence that the cause of the fire was a coolant leak that had ignited on the turbocharger assembly and concluding that this was the only possible cause he "couldn't eliminate," Keene concluded that a coolant leak was the "most probable" or "most likely" cause of the fire. His report stated that "based on the driver smelling an odor" when the heating unit was on, a coolant valve "was likely leaking and spraying coolant in the engine compartment," resulting in the fire. Keene also noted damage to a valve through which coolant traveled and stated that "there's two different places [on the valve that the coolant] could leak from."

Based on his examination and analysis, Keene categorized a coolant leak ignition on the turbocharger as the "most probable" or "most likely" cause of the fire. In his report, he conceded that the "exact cause" of the fire could not be determined "with absolute scientific certainty," although he clearly stated that the coolant leak

4

was the most probable cause. Under cross-examination at his deposition, Keene stated that since he could not state his opinion regarding the cause of the fire "with absolute scientific certainty," that opinion was "basically a scientific guess on this because it is not absolute." During that same deposition, he explained that of the possible causes, the coolant leak theory was the only one he could not eliminate and that it was the most probable or most likely explanation. He stood by his report and confirmed that his opinion was based on the evidence that he reviewed, including the lack of evidence supporting any other plausible theory.

Seizing on Keene's use of the words "scientific guess" and his inability to state his opinion to a reasonable degree of "scientific certainty," Morgan Fleet moved to exclude his causation opinion as speculative. Morgan Fleet also moved for summary judgment on the ground that without Keene's opinion, there was no other evidence creating a genuine issue of material fact regarding the cause of the fire. The trial court granted both motions, specifically holding that Keene's opinion was inadmissible since he was unable to determine the cause of the fire with "absolute scientific certainty" , and concluding that "no other admissible evidence in the record establishes causation." This appeal followed.

1. The first question before the trial court was whether Keene's conclusion that a coolant leak was "most likely" the source of the fire had a reasonable scientific basis. See OCGA § 24-7-702 (b);[1] *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) (under Federal Rule 403, "where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony"); see also *Denson Heating & Air Conditioning Co. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004) (as to causation, a plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result").

By excluding Keene's causation opinion due to his inability to state that opinion to a reasonable degree of "scientific certainty," the trial court applied an incorrect standard that has previously been rejected by our Supreme Court. The Supreme Court has made clear that "[a]n expert is *not* required to prove within a reasonable degree of scientific certainty his opinion of how an accident occurred."

_____

[1] The statute provides that an expert witness "may testify in the form of an opinion" if "(1) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) [t]he testimony is based upon sufficient facts or data; (3) [t]he testimony is the product of reliable principles and methods; and (4) [t]he expert has reliably applied the principles and methods to the facts of the case."

6

*Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (632 SE2d 135) (2006). Rather, "the appropriate standard for assessing the admissibility" of an expert's opinion "is not whether it is speculative or conjectural to some degree, but whether it is *wholly* so." (Emphasis supplied.) Id.

As the trial court held, this is not a case where Keene failed to utilize an appropriate scientific methodology in the formation of his opinion. He did in fact utilize such a methodology. This is a case where the causation expert provided a plausible, scientifically supportable explanation for the most probable or most likely cause of the fire while recognizing and acknowledging that he could not state that opinion with absolute certainty. Because Keene was not required to state that opinion with absolute certainty, the trial court's exclusion of it on this basis was erroneous. See *Zwiren v. Thompson*, 276 Ga. 498, 501, 503 (578 SE2d 862) (2003) (rejecting the argument that a medical expert must state his causation opinion to a reasonable degree of medical *certainty* and instead holding that the proper standard is whether that opinion can be stated to a reasonable degree of medical *probability*; such an expert must "express *some basis* for both the confidence with which his conclusion is formed, and the *probability* that his conclusion is accurate") (citation and punctuation omitted; emphasis supplied).

7

"Although an expert [may lack] direct evidence of the cause of [a] fire, the expert may rely on circumstantial evidence to support his theory." *Cash v. LG Electronics*, 342 Ga. App. 735, 738 (804 SE2d 713) (2017). That is what Keene did here. Indeed, even if his opinion was "based on inadequate knowledge, 'this does not mandate the exclusion of [his] opinion but, rather, presents a jury question as to the weight which should be assigned" to it. *Wadley v. Mother Murphy's Laboratories, Inc.*, 357 Ga. App. 259, 265 (1) (850 SE2d 490) (2020), quoting *Layfield*, 280 Ga. at 851 (1); see also *White Horse Partners LLLP v. Monroe County Bd. of Tax Assessors*, 348 Ga. App. 603, 607 (1) (824 SE2d 57) (2019).

When read in context, Keene's statement that his opinion was his best "scientific guess" was simply his recognition of the fact that the "exact cause" of this fire could not be determined with absolute certainty. That is not the standard for the admissibility of expert testimony. Keene's opinion was based on his examination of the remains of the bus, his observation of the flame patterns and damage to the bus engine, evidence that the bus had been leaking coolant, evidence that Early smelled a burning odor on both occasions while the bus's heater was running, and evidence that coolant valves on two similar buses showed similar signs of leakage. Based on all of this evidence, Keene's opinion that a coolant leak was the "most probable" or

8

"most likely" cause of the fire is admissible. The trial court's exclusion of this opinion testimony was based on an erroneous legal standard, and we reverse on this ground. See *Layfield*, supra; *Wadley*, 357 Ga. App. at 265 (1) (trial court abused its discretion under OCGA § 24-7-702 when it excluded an expert's testimony as too speculative); see also *White Horse Partners LLLP v. Monroe Cty. Bd. of Tax Assessors*, 348 Ga. App. 603, 607 (1) (2019) (no abuse of discretion in admitting opinion testimony when the appellant had not shown that the testimony was "wholly speculative or conjectural" or "not the product of reliable principles and methods").

2. Given our reversal of the trial court's exclusion of Keene's opinion, we remand this case to the trial court to reconsider its grant of Morgan Fleet's summary judgment motion in light of Keene's opinion. In this regard, the trial court ruled that without Keene's opinion, the record was "devoid of evidence sufficient to create a genuine issue as to any essential element" of Early's claims against Morgan Fleet and that "no other admissible evidence in the record establishes causation." It thus appears that, as in *Wadley*, the exclusion of Keene's evidence "formed the sole basis for the trial court's grant" of Morgan Fleet's motion for summary judgment. 357 Ga. App. at 265 (1). "We therefore remand the case to the trial court to reconsider [Morgan Fleet's' motion for summary judgment] in light of our decision, with the

9

benefit of the entire record, to determine whether [that motion] should be granted on another basis or denied." Id.[2]

*Judgment reversed and case remanded with direction. Barnes, P. J., and Mercier, J., concur.*

_____

[2] In its summary judgment order, the trial court also cited to Keene's testimony that "a part can fail at any time" and that it was therefore "impossible to say" whether a "second inspection the night before the fire would have yielded any different results than the inspection the afternoon before the fire." The trial court characterized this testimony as a concession by Keene that it was "impossible to determine whether or not an inspection the night before the fire would have shown a leak, due to the fact that a part can fail at any time." It does not appear to us that the trial court based its grant of summary judgment on this testimony. However, to the extent it did, we hold that the trial court erred in this regard as well. Keene made clear that he did not know what the mechanic looked at the night before the fire and that he could have missed a visible source of the fire. More importantly, as recounted above, the record contains admissible evidence that this bus was exhibiting the same problem the day before the fire as it was on the day of the fire. Based on this evidence, Keene's testimony that "a part can fail at any time" is not a sufficient basis for concluding that Morgan Fleet is entitled to judgment as a matter of law since it is "possible" that the coolant leak started *after* its inspection of the bus. Whether or not there is any other basis for granting Morgan Fleet's motion for summary judgment shall be decided by the trial court on remand, but this particular issue cannot serve as such a basis.